LUKE A. BUSBY, ESQ
Nevada Bar No. 10319
316 California Ave.
Reno, Nevada 89509
775-453-0112
luke@lukeandrewbusbyltd.com
*Attorney for the Plaintiff*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

* * *

TRINA OLSEN,

                    Plaintiff,

vs.

WASHOE COUNTY SCHOOL
DISTRICT, a political subdivision of the
State of Nevada; Washoe County School
District Superintendent TRACI DAVIS;
and DOES 1 through 10, inclusive,

                    Defendants.
_____/

Case No.: 3:19-cv-00665-MMD-WGC

**MOTION FOR PARTIAL SUMMARY
JUDGMENT ON LIABILITY**

**ORAL ARGUMENT REQUESTED**

COMES NOW, TRINA OLSEN, ("Olsen" or "Plaintiff"), by and through the

undersigned counsel, and files the following Motion for Partial Summary Judgment

on Liability against Defendant WASHOE COUNTY SCHOOL DISTRICT, a political

subdivision of the State of Nevada ("WCSD") and former WCSD Superintendent

TRACI DAVIS ("Davis").

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.    Summary**

In May of 2017, Trina Olsen ("Olsen"), in her capacity as an Assistant

Principal at Hug High School in Reno, Nevada, was made aware of allegations that

her boss, Hug High Principal Lauren Ford ("Ford") and Dean of Students Jessica

1

Wilson ("Wilson") had caught students at Hug High with marijuana at school, but had allowed the students to keep the marijuana.  Olsen felt it was her duty to report these allegations to WCSD Area Superintendent Roger Gonzalez ("Gonzalez"), an official outside of Hug High.  However, rather than investigate Wilson and Ford regarding allegations that they returned drugs to students, Gonzalez, Ford, and other WCSD employees, including Labor Relations Manager Virginia Doran ("Doran"), and ultimately Davis, engaged in a sustained and vindictive campaign of character assassination, false accusations, and retaliation against Olsen.

Despite having an excellent track record as a WCSD employee for a number of years without any discipline prior to the marijuana incident at issue in this case, after discovering allegations that Wilson and Ford had returned marijuana back to students and investigating and reporting the matter to Gonzalez, Olsen has been subject to a barrage of false accusations and allegations of misconduct by WCSD officials, which ultimately led to Olsen being fired by Davis in coordination and consultation with several current WCSD officials, including the General Counsel for WCSD and current WCSD Superintendent Kristin McNeil.  Olsen was accused of, among other things, unprofessional conduct, dishonesty, and gross misconduct in retaliation for bringing to light Ford's actions.

When Olsen sought due process to prove her claims at arbitration, WCSD fired her anyway, even though doing so was inarguably a breach of the very law that WCSD told Olsen to invoke in seeking review of the recommendation to fire her.  When Olsen prevailed at arbitration, WCSD continued to fight to silence Olsen to try and cover up what had happened and continued to ignore the law.   There are no

genuine issues of material fact for the Court to resolve in this case.  The issues of fact have already been decided at arbitration.  What remains in dispute are pure questions of law.

## II.    Statement of Facts

Olsen has been an employee of WSCD since 1992 and Olsen became a full-time teacher at WCSD in 1996. *See* Declaration of Trina Olsen, Exhibit 1.  Olsen was a probationary employee for three years until 1999, when she gained post-probationary status because she was deemed to have performed her job satisfactorily. *Id.*

Olsen worked in various positions as a certificated teacher and then Dean of Students.  For the 2016-2017 school year, Olsen was promoted to the position of Assistant Principal at Hug High School, where she reported to and was supervised by Ford. *Id.*  In her capacity as Assistant Principal at Hug High, Olsen was part of the administrative team running Hug High, which included a role in disciplining students. *Id.*

From the beginning of her tenure at Hug High, Olsen was concerned with the lack of discipline and the permissive culture of the staff at Hug High when it came to holding students to account for failure to follow the rules.  See Exhibit 1. Olsen was concerned that a lack of leadership from Ford on the discipline issues was a core cause of this problem.  *Id.* Hug High's students where not from the wealthiest areas of Washoe County, and Olsen perceived a culture of low expectations existed for these students based on this fact.  *Id.* Olsen was a close witness to a student getting shot at Hug High by a campus police officer in December of 2016, which reinforced

Olsen's belief that students at Hug High were out of control.  *Id.* Ford would refuse to acknowledge the reality that the school she was running was rife with a lack of discipline and control. *Id.*

In paragraph 13 of the Plaintiff's Amended Verified Complaint[1], Olsen alleged that Ford completed Olsen's yearly Performance Evaluation on or about April 21, 2017, and rated Olsen overall effective. (ECF Doc # 1-1 at 88).  In WCSD's Answer (ECF Doc. #13 at 3), WCSD admitted to this allegation and stated that the evaluation speaks for itself.

On May 5, 2017, Olsen was informed by a teacher at Hug High of allegations that illegal drugs may have been returned to students by Wilson. *Id.*  When Olsen confronted Wilson, Wilson admitted that she caught a student with marijuana, but had returned the marijuana to the student, and Wilson stated that she has seen Ford do the same thing. *Id.*

Beginning on May 6, 2017 according to text messages between a Hug High teacher and Wilson from around the time of the marijuana incident at issue in this case, it is clear that the student in question was caught with marijuana at Hug High by Wilson and Wilson returned the marijuana to the student.  *See* Confidential Exhibit 2.[2]

Shortly after being made aware of the allegations that Ford and Wilson returned drugs to students, Olsen discussed the matter with her mentor David

---

[1] This matter was filed by Olsen in the Second Judicial District Court in Washoe County, but was removed to this Court by WCSD on November 1, 2019. See ECF Doc #1.  The State of Nevada waives 11th Amendment sovereign immunity when it voluntarily removes a case to Federal Court. *Embury v. King*, 361 F.3d 562 (9th Cir. 2004) and *Walden v. Nevada*, 945 F.3d 1088, 1091 (9th Cir. 2019).

[2] This Motion is accompanied by a motion for leave to file Exhibits 2, 5, and 11 under seal per LR-10-5.

Murdock, who was an assistant principal at Sparks High School.  Exhibit 3.  On May 8, 2017, Olsen then discussed the matter with Brad Bodine, who was also an assistant principal at Hug High.  Bodine recommended that Olsen direct Wilson to self-report the incident to Ford. See Exhibit 3 at page 3.

On May 8, 2017, Olsen directed Wilson to self-report the marijuana incident to Ford. *Id.*  On May 11, 2017, Wilson self-reported the marijuana incident to Ford. *See* Statement of Wilson in Confidential Exhibit 5.

On May 17, 2017, Olsen received a letter from Gonzalez, attached hereto as Exhibit 6, informing Olsen that she was being reassigned to Traner Middle School pending an investigation of allegations of misconduct against Olsen. Gonzalez's letter states that Olsen is being reassigned for, "protection of your rights as well as the rights of students and staff at Hug High School." *Id.*

On May 18, 2017, Olsen responded to Gonzalez in a letter stating, "there is much more to this situation, and I will be defending myself."  Exhibit 7 page 2. Gonzalez copied Virginia Doran to his response to Olsen, also in Exhibit 7, to which Doran responded that Gonzalez should direct Olsen not to discuss the investigation.

Beginning on May 19, 2017, Olsen sent emails to Gonzalez to request a meeting for help to formally report the marijuana incident and to receive support. Gonzalez refused to meet with Olsen, and instead suggested Olsen fill out a staff complaint regarding her concerns about Ford.  Exhibit 1.

On May 22, 2017, Ford informed Olsen that Ford was removing positive elements of Olsen's employment evaluation more than a month after it was finalized and filed with WCSD.  Olsen objected to these changes to her evaluation because

her evaluation was already complete, but Gonzalez refused to intervene. Gonzalez permitted Ford to retroactively change Olsen's employment evaluation such that positive elements of the evaluation were removed.  See Exhibits 1 and 8.

On May 24, 2017, Olsen received a "Notice of Investigatory/Due Process Meeting and Right to Representation" signed by Ford, alleging various acts of misconduct against Olsen, including an allegation that Olsen engaged in misconduct for failing to report the marijuana incident to Ford: "You allegedly failed to report to me an incident reported to you on May 8th involving a student, staff member and drugs." Exhibit 9.

On May 25, 2017, Olsen wrote another email to Gonzalez in Exhibit 10 requesting to formally report the marijuana incident and requesting a meeting with Gonzalez.

On May 31, 2017, Ford wrote an email to Doran, attached hereto as Confidential Exhibit 11 in which Ford states that she caught a student with drugs but did not suspend the student, but rather gave the student 2 days in school suspension, because the student provided the names of her dealer and other students who were dealing on campus.  Ford concluded this email to Doran by thanking her and stating that she owed Doran "big time for today." *Id.*

On June 1, 2017, Olsen authored an email to Gonzalez requesting a meeting, referring to her earlier email to Gonzalez involving the marijuana incident.  See Exhibit 12.  Gonzalez then wrote an email to Doran, also in Exhibit 12, and stated:

> I do not want to meet with her at this time. With regard to
> the marijuana allegation (which was actually about
> suspension not about returning drugs), it seems she is

> only going to bury herself deeper. Should I advise her to just use the form?

In the same email chain, Doran responded: "I concur...let's see where this goes" *Id.*

In another email chain dated June 1, 2017, attached hereto in Exhibit 13, shows that rather than looking into whether Olsen's allegations were accurate, the same day Olsen was looking to Gonzalez for help in addressing the issue, Gonzalez and Doran were instead communicating with Ford about the marijuana incident. See Exhibit 13.

On June 2, 2017, in an email exchange between Ford and Doran, Doran describes that the amount of marijuana at issue, that it "wouldn't have even qualified for a police measurement...as I understand it." Exhibit 4.

On June 4, 2017, Olsen again wrote to Gonzalez requesting to meet to grieve about Ford, but Gonzalez simply forwarded the message to Doran on June 6, 2017. Exhibit 14.

On June 26, 2017, Olsen received another, "Notice of Investigatory-Due Process Meeting and Right to Representation" also signed by Ford, alleging various acts of misconduct against Olsen. Exhibit 15.

On July 19, 2017, Olsen received a Letter of Admonition, signed by Ford, attached hereto as Exhibit 16.  Also on July 19, 2017, Olsen received a second Letter of Admonition, signed by Ford, attached hereto as Exhibit 17.

On July 19, 2017, Olsen received another, "Notice of Investigatory/ Due Process Meeting and Right to Representation" signed by Gonzalez, alleging various acts of misconduct against Olsen including regarding the marijuana incident: "It is

alleged that you have brought false claims and allegations against Lauren Ford." Exhibit 18.

On July 27, 2017, Olsen received a letter from Gonzalez informing her that she was being placed on Administrative leave with pay pending resolution of the allegations of misconduct against Olsen.  Exhibit 19.  In the letter, Gonzalez also directed Olsen not to discuss the investigation with anyone except council or her WSPA representative.  *Id.*

On August 22, 2017, Olsen wrote a letter to Traci Davis, attached hereto as Exhibit 20, appealing the Letters of Admonition issued on July 19, 2017.

On November 14, 2017, after a hearing with then Deputy Superintendent Kristin McNeil, McNeil issued two letters in Exhibits 21 and 22 denying Olsen's grievance against WCSD and upholding the allegations of misconduct against Olsen.  In addressing the marijuana incident, McNeil stated:

> In reviewing statements it was clear to me you did not follow correct protocols put into place for reporting such incidences. You at no time went to Mrs. Ford to report what had been told to you by Dean Jessica Wilson. Exhibit 21 at 5.

On November 17, 2017, Olsen again wrote to Davis directly requesting a 15-minute meeting to discuss what was happening, to which Davis never responded.  Exhibit 23.  In Exhibit 23, Olsen states: "I received an "effective evaluation, only to receive 15 allegations of misconduct within 6 weeks of that evaluation. Procedures where not followed and the system has failed me."

On Monday May 7, 2018, Dawn Huckaby, Chief Human Resources Officer at WCSD wrote Doran to inquire as to the status of Olsen and when her "letter goes

1  out for separation" because WCSD was looking to fill Olsen's position. Exhibit 24.

2  Doran responded that it was "Probably going out by Wednesday." *Id.*

3      On June 28, 2018, Gonzalez authored a letter to Olsen, attached hereto as

4  Exhibit 25, copied to Davis and other WCSD employees, which recommended that

5  Olsen be dismissed from WCSD. Among the allegations against Olsen detailed by

6  Gonzalez in the letter, were that Olsen had made false accusations against Ford

7  related to the marijuana incident.  Attached to Gonzalez's letter in Exhibit 25 is a

8  copy of the provisions of NRS 391.822 and the letter specifically states that, "If you

9  wish to appeal this action, you will need to follow NRS 391.822 (attached

10  document)."   Gonzalez's letter in Exhibit 25 contains the following statement

11  regarding the marijuana incident:

12
13
14
                What the Dean had observed was Principal Ford not
15              issuing a consequence to another student who possessed
                marijuana as that student had served as an informant and
16              had provided the school with the name of the student who
                was dealing the drugs on the campus.
17

18      On July 6, 2018, Olsen's then counsel filed a Request to Arbitrate the matter

19  of the recommendation of her firing by Gonzalez which was addressed directly to

20  Davis.  Exhibit 26.   Also on July 6, 2018, Olsen's then counsel sent a Grievance

21
22  Protesting Recommendation To Discharge, which was also addressed directly to

23  Davis. See Exhibit 27.

24      On July 19, 2018, Olsen submitted a staff complaint addressed to WCSD and

25
26  Davis complaining about the situation involving Ford claiming that she had been

27  retaliated against for reporting the marijuana allegations against Ford.  Exhibit 28.

28

On July 23, 2018, after not receiving her paycheck, Olsen was informed by WCSD via email that because her status at WCSD was "recommended for dismissal," her pay had been suspended.  See Exhibit 29.

On July 27, 2018, Olsen was notified by Davis that she was discharged effective (retroactively) July 5, 2018, despite the fact that Davis, by the very terms of the July 27, 2018 letter, was aware that Olsen had elected to arbitrate the matter and that arbitration proceedings were in process.  See Exhibit 30.   At her Deposition, Davis stated that at the time she issued the letters in Exhibit 30 that she knew that Olsen requested arbitration.  Exhibit 31 at 41:23.

On July 30, 2018 in a letter signed by Doran attached hereto as Exhibit 32, and copied to Davis, addressing the July 19, 2018 Staff Complaint received from Olsen in Exhibit 28, Doran states:

> Effective July 5, 2018 you were dismissed from service
> with the District and no longer a staff member of the
> District after that date. Therefore, the District rejects the
> staff complaint and will not process it.

Olsen's termination was the subject of arbitration proceedings before Arbitrator Andrea L. Dooley in Case No. LA-627-2018 on November 1st, 2nd, and 28th of 2018, conducted in Reno, Nevada.  Dooley issued a Decision and Award on December 13, 2018 attached hereto as Exhibit 33.  The Arbitrator found: a. WCSD violated NRS 391.822 when Davis terminated Olsen on July 5, 2018 without waiting for the final report from the Arbitrator; *Id.* at 36. b. WCSD did not meet their burden of proof that the alleged actions against Olsen constituted misconduct; *Id.* at 34. c.

WCSD took disciplinary measures against Olsen that were retaliatory; *Id.* at 32, and

d. WCSD's dismissal of Ms. Olsen was arbitrary and capricious. *Id.* at 38.

The Arbitrator's Decision and Award stated that WCSD, "…must reinstate Ms. Olsen and make her whole back to July 5, 2018, the superintendent will then follow the provisions of 391.824(6)." *Id.*  WCSD did not comply with the provisions of NRS 391.824(6) within 5 days of the Decision and Award.  Rather, in the time period following issuance of the Decision and Award, WCSD proposed that Olsen sign a settlement agreement that contained non-disparagement and confidentiality provisions in exchange for rehiring her and paying Olsen's back pay. *See* Exhibit 34.  Olsen refused to sign WCSD's proposed settlement agreement because she felt that WCSD was trying to sweep Olsen's allegations under the rug. *See* Exhibit 1.

On January 9, 2019 Olsen was given her job back and was subsequently provided with backpay from July 5, 2018 to the date of rehire.  *See* Exhibit 35.

On January 15, 2019, in an email exchange between WCSD board president Katy Simon Holland and WCSD board member Andrew Caudill attached hereto as Exhibit 36, Caudill expressed concerns about Olsen's case: "I am super concerned when an independent arbitrator says our superintendent broke the law as well as the taxpayer expense in this matter." In response, Simon-Holland stated:

> ….arbitrators (who are quite routinely from California) have often made decisions in my career that I completely disagree with and have been judged to be incorrect by other eminently qualified legal experts, just as judges' decisions are often overturned by higher courts. In your research, please don't assume that just because the arbitrator stated his or her opinion about something, it is true. I find it very hard to believe that our legal staff recommended a course of action to the Superintendent

that was a violation of law, but I will keep an open mind
and will wait to hear more. *See* Exhibit 36

On January 24, 2019, in a letter signed by Traci Davis and Katy Simon

Holland, written in response to public comments made by Olsen at a January 15,

2019 public meeting of the WCSD board of trustees, Holland and Davis state: "The

District never ordered you not to speak, which would be a gag order;" and "…

drugs were never returned to either of these students, and the arbitrator's decision

is even confused over this issue contradicting itself in parts;" and: "To be clear, it

would be defamation to state otherwise." [underlining in original] Exhibit 37.

On February 8, 2019, WCSD issued a "Revised Letter of Admonition" to

Olsen for various alleged infractions.  This Letter of Admonition was signed by Ford,

who had subsequently been promoted to Area Superintendent to an area of WCSD

that does not include Hug High, or Wooster High School, where Olsen was rehired

by WCSD and where she currently works. See Exhibit 38.

On July 1, 2019, Davis was fired as superintendent from WCSD.[3]  McNeill

was appointed as interim superintendent thereafter and was appointed as

superintendent on April 28, 2020.[4]

On February 24, 2020, Davis' deposition was taken for this case.  At her

deposition, Davis testified that she first became aware of an investigation of Olsen:

Q:· Okay.· So in June 28th of 2018, you didn't know about
this situation?

---

[3] https://www.reviewjournal.com/local/education/washoe-school-board-fires-superintendent-traci-davis-1699365/.
[4] https://www.rgj.com/story/news/2020/04/28/wcsd-names-kristen-mcneill-its-new-superintendent/3043141001/

> A:· I mean, I knew that she was going -- that -- that there
> was going to be a recommendation for dismissal based on
> the investigation.
> Q:· Do you remember who told you that?
> A:· Deputy Superintendent McNeill.
> Exhibit 31 at 32:4.

Davis testified that the decision to fire Olsen was made in conjunction with other officials at WCSD, including the Office of General Counsel at WCSD and "the deputy," meaning then Deputy Superintendent McNeill, and that Davis would receive input and advice from WCSD staff on the issues before making a decision. *Id* at 33-36.

When presented with the document in Exhibit 30, which is the letter signed by Davis terminating Olsen's employment, Davis stated that she recalled slightly that the dispute between WCSD and Olsen was going to an arbitrator to decide and that Davis was advised that it was ok that Olsen be fired at that time. *Id.* 41:23. Davis also testified that Olsen was not treated any differently than any other employees at WCSD subject to discipline and as far as she was aware Olsen was treated the same way as similarly situated people at the district. *Id.* 50:4.

On February 3, 2020, 417 days after issuance of the Decision and Award, and only in a response to pending hearing on a Motion for Preliminary Injunction filed in this case by Olsen, then Interim Superintendent McNeill issued a letter to Olsen stating that WCSD does not intent to recommend Olsen's dismissal, "or take any adverse employment action against you based on the facts and circumstances addressed in the Arbitration Recommendation." Exhibit 39.

However, to date, and despite WCSD's assurances, Olsen is still dealing with the fallout from the marijuana incident in the form of the terms of the Letter of Admonition issued by WCSD in Exhibit 38.  The terms of the Letter of Admonition issued by Ford after the arbitration require that Olsen must have weekly meetings with her supervisor and that she is precluded from assisting in certain matters involving testing, despite the fact that the Arbitrator found that Ford bore some of the responsibility for the testing issues of which Olsen was accused.  McNeill's representation that WCSD will not take any adverse employment action against Olsen based on the facts and circumstances addressed in the Arbitration Recommendation is inconsistent with the fact that Olsen is still living with the adverse consequences of her reporting Ford in the form of the terms of the Letter of Admonition.

**III.     Standard of Review**

Pursuant to Federal Rule of Civil Procedure 56, an order granting summary judgment should be issued only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. "The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). In a summary judgment motion, the trial court is to perform a "threshold inquiry of determining whether there is a need for a trial." *Taybron v. City and County of San Francisco*, 341 F.3d 957, 959 (9th Cir. 2003) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986)).  Summary judgment should be granted if, taking the evidence and all reasonable inferences drawn therefrom in the

14

light most favorable to the non-moving party, there are no genuine issues of material fact. *Furnace v. Sullivan*, 705 F.3d 1021, 1026 (9th Cir. 2013).  An issue of material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010).  The court must not weigh the evidence or determine the truth of the matter but only determine whether there is a genuine issue for trial.  See *Balint v. Carson City*, 180 F.3d 1047, 1054 (9th Cir. 1999).

As an assistant principal at Hug High, Olsen was an "administrator" as the term is defined in NRS 388.1215 and NRS 931.650(1), as she was an, "…administrator or other person in charge of a school" and was employed in that capacity by WCSD.  Because of her long tenure at WCSD, Olsen was a "post-probationary" employee and an "administrator" in a probationary position as these terms are defined and used in NRS 391.820(8).  NRS 391.824(1) provides:

> If a timely request for an expedited hearing is made pursuant to NRS 391.822, ***the superintendent must not take any further action relating to the recommendation to dismiss the probationary employee until the written report from the arbitrator is filed*** with the superintendent and the probationary employee pursuant to subsection 2. [***emphasis added***]

## IV.   Argument

### A.  Collateral Estoppel

At arbitration, Olsen already prevailed in showing the facts that support the conclusion that WCSD terminated Olsen in violation of her Due Process rights under the 14th Amendment, as conferred by NRS Chapter 391.  As explained in *Greenblatt v. Drexel Burnham Lambert, Inc*., 763 F.2d 1352, 1360 (11th Cir. 1985)

(citing RESTATEMENT (SECOND) JUDGMENTS § 84(3) and cmt. c (1982)), the Court should estop WCSD and Traci Davis from relitigating the facts found by Arbitrator Andrea Dooley in the Decision and Award in Exhibit 33:

> When an arbitration proceeding affords basic elements of adjudicatory procedure, such as an opportunity for presentation of evidence, the determination of issues in an arbitration proceeding should generally be treated as conclusive in subsequent proceedings, just as determinations of a court would be treated.

The 9th Circuit has adopted the same essential rule, i.e. that collateral estoppel should apply where the issue at stake is identical to one alleged in prior litigation and the issue has been actually litigated in prior litigation, and determination of issue in prior litigation was a critical and necessary part of judgment in earlier action. *Clark v. Bear Stearns & Co., Inc*., 966 F.2d 1318, 61 USLW 2032, Fed. Sec. L. Rep. P 96821, 1992 WL 126611 (9th Cir. 1992).

Nevada Law strongly supports the application of collateral estoppel to findings of fact that have been adjudicated in arbitration: "Collateral estoppel applies to arbitration." *City of Reno v. Reno Police Protective Ass'n*, 118 Nev. 889, 894, 59 P.3d 1212, 1216 (2002) citing *Int'l Assoc. Firefighters v. City of Las Vegas*, 107 Nev. 906, 911, 823 P.2d 877, 880 (1991).

The parties mutually selected Dooley to resolve the dispute between Olsen and WCSD. The arbitration was conducted pursuant to the Expedited Labor Arbitration Procedures established by the American Arbitration Association, in accordance with NRS 391.822(2)(b).   See Exhibit 33 at 1.

As described above, the facts underlying the dispute between Ms. Olsen and WCSD have already been subject to a three day evidentiary hearing, after which the Arbitrator concluded that WCSD took retaliatory action against Olsen and that WCSD's firing of Olsen was "arbitrary and capricious," and was done in violation of applicable law.  *See* Exhibit 33 at 19 and 37.

> … taking disciplinary action against someone for making a complaint of alleged misconduct is retaliatory and has the effect of inhibiting people from coming forward with other allegations of misconduct. There is genuine uncertainty about what Wilson's statement meant. In the third hand account Olsen received, Wilson had found drugs in a student's wallet and then returned the drugs to the student. When asked about it, Wilson said that "Lauren had done the same thing." It's not unreasonable to find that statement shocking to hear about one's superior and to believe that the District should take steps to investigate the matter.

> The evidence presented by the District did not support the allegation that Olsen made false allegations or was dishonest. Olsen reported a hearsay statement and expected a fair investigation, and instead was terminated. This discipline is retaliatory and overly punitive. *Id.* at 32

> Because of the retaliatory nature of the recommendation of dismissal, the Employer's lack of just cause for discharge is arbitrary and capricious. *Id.* at 37

Olsen has plead four causes of action in her Amended Verified Complaint (See Doc. #1-1): a 14th Amendment Due Process Claim against Defendant Traci Davis, a 42 U.S.C. Section 1983 *Monell* Claim against WCSD, a Due Process Claim based on Article 1 Section 8(2) of the Nevada Constitution against Davis and WCSD, and a Tortious Discharge claim against Davis and WCSD.  *See* Verified Complaint.

### B.  Olsen's 14th Amendment Rights to Due Process Were Violated by Davis

The Due Process Clause of the 14th Amendment to the US Constitution provides that a state may not deprive a person of life, liberty, or property without due process of law.  While 42 U.S.C. 1983 creates no substantive rights, it creates a vehicle for enforcing existing federal rights, such as the right to due process of law.

Due process rights exist where an employee has a property interest in his or her employment or a reasonable expectation of continued employment.  Property interests related to employment are created and defined by existing rules, such as state law, that secure certain benefits and that support claims of entitlement to those benefits. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564 (1972) and *Perry v. Sindermann*, 408 U.S. 593, 596, 92 S. Ct. 2694, 2697 (1972).  Due Process rights are, "…conferred, not by legislative grace, but by constitutional guarantee." *Arnett v. Kennedy*, 416 U.S. 134, 167 (1974).  While the legislature may elect not to confer a property interest, it may not deprive a granted property interest without first complying appropriate procedural safeguards. *Id.*

Davis 'actions against Olsen the action occurred under color of Nevada law resulted in the deprivation of Olsen's Constitutional right to Due Process under the 14th Amendment.  *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir.2006) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)).  The undisputed facts show that Davis was aware of and participated in the firing of Olsen directly, as Davis put pen to paper to effect that result as shown in Exhibit 30.  *Avalos v. Baca*, 596 F.3d 583, 587 (9th Cir.2010).  Davis' conduct was a proximate cause of Olsen's

injury, as Davis fired Olsen directly. *Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir.2008).

Property interests are not created by the Constitution but are created by existing rules and understandings that stem from an independent source such as state law. . .'" *Cleveland Bd. Of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985) (quoting *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972)).  The provisions of NRS Chapter 391 establish procedures that govern the management of personnel matters by WCSD and specifically provide procedural safeguards for teachers and administrators in their continued employment. See *Nelson v. Halima Academy Charter School*, Case No. 03:05-CV-0171-LRH(RAM), 2006 WL 1994878, at *2 n.4 (D. Nev. July 14, 2006).  Olsen was a postprobationary employee and had a property interest in her job at WDSD.[5]  At Arbitration, WCSD conceded that the were required to show just cause to fire Olsen. Exhibit 33 at 20.  According to the Negotiated Agreement between WCSD and the Washoe Principals Association attached hereto as Exhibit 40, Section 18.1: "The School District shall not discharge, demote, suspend or take any other disciplinary action against a post probationary bargaining unit member of this unit without just cause."  The Arbitrator's decision concludes that WCSD did not have just cause to terminate Olsen:

> … the Arbitrator concludes that the Employer did not meet their burden of proof that the alleged actions constituted

[5] "This status does not mean that all postprobationary employees must be terminated only for cause. It simply means that they are guaranteed a renewal unless they are terminated. While working in a standard public school, this means that they will be renewed unless terminated for cause." *Nelson v. Halima Acad. Charter Sch.*, 03:05-CV-0171-LRHRAM, 2006 WL 1994878, at *4 (D. Nev. July 14, 2006)

misconduct. The District does not have just cause for
termination of Trina Olsen. *Id.* at 34.

Nevada law requires that WCSD **must** follow procedures required by statute
in nonrenewal of even a probationary teacher's contract. *McCracken v. Elko
County Sch. Dist.*, 103 Nev. 655, 747 P.2d 1373 (1987).

There is no genuine issue of fact as to whether WCSD deprived Olsen of a
granted property interest in violation of its own procedural safeguards, i.e. the right
for an employee in Olsen's position to seek to arbitrate the recommendation that
she be terminated in accordance with NRS 391.822, and the prohibition in NRS
391.824(1) on taking any further action relating to the recommendation to dismiss
the Olsen until the written report of the arbitrator was filed.  Davis fired Olsen and
cut off her pay effective July 5, 2018 (See Exhibit 30), and the Decision and Award
was issued on December 13, 2018.  Exhibit 33.

The facts also show that even after Olsen prevailed at arbitration, WCSD
continued to try and pressure Olsen to try ang get her to sign a non-disclosure and
non-disparagement agreement before taking the actions required by NRS
391.824(6). *See* Exhibit 34.  Olsen had a plain right to be free from dismissal without
just cause and had a right to a fair hearing before a third party neutral before she
could be terminated by WCSD.  Olsen also had the right, subsequent to the
arbitration process described in NRS 391.822 et seq, to be affirmatively informed,
"that dismissal of the employee will not be recommended to the board and that no
further action will be taken against the employee." *See* NRS 391.824(6)(b).  WCSD
did not even attempt to comply with this law until it faced a Motion for Preliminary

Injunction in this case, when it issued the letter in Exhibit 39 on February 2, 2020 stating that WCSD would not take any further adverse employment action against Olsen.

There is an enormous power differential between a well-funded government agency such as WCSD and a single employee like Olsen.  If a public official chooses to disregard procedural safeguards and run roughshod over an employee's rights, doing so exerts an enormous amount of psychological and financial pressure on the employee to accept whatever resolution may be offered, if any, or to just give up.  See Exhibit 1.   Subsequent to the issuance of the Decision and Award, rather than comply with the provisions of NRS 391.824(6) within 5 days, WCSD tried to coerce Olsen into signing a settlement agreement that contained a non-disparagement clause and confidentiality provisions that would have prevented Olsen from speaking out about what happened to her in exchange for the back-pay and reinstatement to her position.  See Exhibit 34.  WCSD has continually tried to silence Olsen in this matter by directing her not to speak about the incident and threatening her when she did so.  *See* Exhibits 19 and 37. Olsen refused to sign any such settlement and was not informed that she was to be reinstated until January 9, 2019 (See Exhibit 35), nearly a month after the December 13, 2018 Decision and Award in Exhibit 33.

**C.  WCSD is liable to Olsen under *Monell***

Actions of Davis are a policy or custom of WCSD.  See *Jett v. Dallas Independent School District*, 491 U.S. 701, 737 (1989), a policy or custom becomes official when it results from the decision or acquiescence of the municipal officer or

body with final policymaking authority over the subject matter of the offending

policy.  Local governments are liable for underlying 42 U.S.C. 1983 claims if the

deprivation is the result of the agency's custom, policy, or practice. *Monell v. New*

*York City Department of Social Services*, 436 U.S. 658 (1978). See also *Anderson*

*v. Warner*, 451 F.3d 1063, 1070 (9th Cir. 2006).  Davis, as superintendent of WCSD,

deprived Olsen of her rights under the law, and was the officer with final

policymaking authority over personnel matters within WCSD, including over the

decision to fire Olsen.  *Lytle v. Carl*, 382 F.3d 978, 981 (9th Cir.2004) and *Goldstein*

*v. City of Long Beach*, 715 F.3d 750, 753 (9th Cir.2013).

Whether an official is a policymaker for *Monell* purposes is a question of state

law for the court. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988); see *Ellins*

*v. City of Sierra Madre*, 710 F.3d 1049, 1066 (9th Cir.2013).  The determination is

made on a function-by-function approach analyzed under the state organizational

structure*. Goldstein*, 715 F.3d at 753.  A "policy" is a deliberate choice to follow a

course of action made from among various alternatives by the official or officials

responsible for establishing final policy*. Fogel v. Collins*, 531 F.3d 824, 834 (9th

Cir.2008).  From the statutory scheme in NRS 391.210 *et seq*., and WCSD's

policies, the superintendent of WCSD has the policymaking authority to terminate

WCSD employees.  WCSD Board Policy 4105[6] states in pertinent part, "Authority is

delegated by the Board of Trustees to the Superintendent to implement the

---

[6] WCSD Board Policies are available at https://www.wcsdpolicy.net/searchboardpolicy.php

employment procedures of the District."  WCSD Board Policy 9085(a) "Delegation

to Superintendent" states in pertinent part that:

> …the superintendent is authorized, within the powers and
> authority of the Board of Trustees, to make all decisions,
> take actions, establish practices, develop activities, and
> **generate further policies, rules or procedures as
> necessary and/or desired**…"  [**emphasis added**]

WCSD Board Policy 9085(f) states in pertinent part: "…the Superintendent is

authorized to establish all further procedures, make all decisions, take all actions,

establish all practices, and develop all activities."  WCSD Board Policy 9088

"Trustee/Superintendent Relations" states in pertinent part that:

> The Superintendent is the Board's only link to operational
> achievement and conduct so that all authority and
> accountability of staff, as far as the Board is concerned, is
> considered the authority and accountability of the
> Superintendent.

The "function" of firing Olsen was carried out by Davis (See Exhibit 30) and

was done in coordination with her team at WCSD, including WCSD's Office of

General Counsel.  Exhibit 31 at 11:4, 24:19, and 35:3.  The idea that Davis was

acting beyond the scope of her policymaking authority at WCSD or in a vacuum as

a rouge employee at WCSD for purposes of evaluating *Monell* liability is

inconsistent with the undisputed facts and Davis' testimony in Exhibit 31.

WCSD is liable for the acts of Davis if these acts caused a constitutional

violation, even if the constitutional violation occurs only once. *Pembaur v. City of

Cincinnati*, 475 U.S. 469, 478 & n.6 (1986).  Olsen was terminated by Davis with the

full knowledge that Olsen had opted to arbitrate her dispute with WCSD in

accordance with NRS 391.822, of WCSD administration and the Board of Trustees,

and the current Superintendent at WCSD, Kristin McNeill, as shown by the Exhibits attached hereto, including but not limited to Exhibits 21, 22, 25, 26, 27, and 28.

As the letter in Exhibit 30 shows, Davis knew that Olsen's case was subject to arbitration, but Davis was indifferent to this fact and fired Olsen anyway.  Davis's action in terminating Olsen with deliberate indifference to her rights was a policy of WCSD, as explained above.  Olsen's firing was a violation of the statutory provisions applicable to WCSD governing the dispute between Olsen and WCSD, the provisions of which Davis and WCSD deliberately ignored in their effort to pressure Olsen to stop speaking publicly about what had occurred at Hug High. Davis testified at her deposition in Exhibit 31 that Olsen was not treated any differently than any other employee at WCSD subject to discipline and as far as she was aware Olsen was treated the same way as similarly situated people at the district. *Id.* 50:4, reinforcing that WCSD has a pattern and practice of ignoring the law when it handles disputes with employees.  At her deposition, when asked whether WCSD had a policy in effect in Washoe County School District of disciplining or terminating employees who reported allegedly unlawful activity, Davis answered, "I don't recall the policy, but I'm sure there is a policy. There are thousands of policies." *Id.* at 72:22. Davis also asserted that the decision to fire Olsen was made by "The Team" (Id. at 41:15), including WCSD's counsel. *Id.* at 66:16.  However, officials such as Davis, "…cannot cloak themselves in immunity simply by delegating their termination procedure decisions to their legal department, as the availability of such a defense would invite all government actors to shield themselves from § 1983 suits by first seeking self-serving legal memoranda before taking action that may violate a

constitutional right." *Silberstein v. City of Dayton*, 440 F.3d 306, 318 (6th Cir. 2006)

citing *V-1 Oil Co. v. Wy. Dept. of Envtl. Quality*, 902 F.2d 1482, 1488 (10th Cir.

1990).  The moving force behind Olsen's dismissal was the policy of Davis and

WCSD to disregard Nevada law governing due process.

### D.  Due Process Under the Nevada Constitution

Olsen has also brought a Due Process Claim based on Article 1 Section 8(2)

of the Nevada Constitution, which forbids action which is fundamentally unfair and

shocking to the universal sense of justice.  *Summers v. Warden of Nev. State*

*Prison*, 84 Nev. 326, 329, 440 P.2d 388, 390 (1968).

Public employees who may be terminated only for cause have a

constitutionally protected property interest and are entitled to due process ***before***

being deprived of that interest.  *Pressler v. City of Reno*, 118 Nev. 506, 511, 50 P.3d

1096, 1098 (2002).  Because Olsen was a postprobationary employee as described

above, WCSD violated the Due Process Clause of the Nevada Constitution when it

fired Olsen in violation of the procedural requirements of NRS Chapter 391 and

where its firing of Olsen was retaliatory, was arbitrary and capricious, and without

just cause as found by the Arbitrator. Exhibit 33.  Firing Olsen for reporting Ford to

Gonzalez and despite the prohibition from any such action until a neutral third party

had heard Olsen's case as provided in NRS 391.824(1) was fundamentally unfair

and shocking to the universal sense of justice.

### E.  Tortious Discharge

Olsen's Tortious Discharge claim should succeed as well because the facts

indicate Olsen was fired for reporting the alleged illegal conduct of her co-workers

involving providing illegal drugs to students. *See* Exhibit 25, where one of the allegations against Olsen that led to her dismissal was that she was guilty of: "Gross Misconduct; making false accusations toward your immediate supervisor."  As determined in the Decision and Award in Exhibit 33, the Defendant's decision to fire the Olsen was caused by Olsen's lawful and appropriate action of reporting the alleged illegal conduct of co-workers and, as such, her firing was in derogation of the public policy of the State of Nevada, i.e. the right to report of illegal activities of others to the appropriate authorities without fear of retaliation.  *Allum v. Valley Bank of Nevada*, 114 Nev. 1313, 1316, 970 P.2d 1062, 1064 (1998) and *Buchanan v. Watkins & Letofsky*, LLP., 2019 WL 3848785, at *6 (D. Nev. Aug. 15, 2019).

A question at issue is whether Olsen reported the allegedly illegal conduct to an appropriate authority other than her supervisor as required by *Wiltsie v. Baby Grand Corp*., 774 P.2d 432, 433 (Nev.1989).  Olsen worked at Hug High School where her immediate supervisor was Ford.  Under *Wiltsie*, where an employee "report[s] the activity to his supervisor rather than the appropriate authorities," the employee is "merely acting in a private or proprietary manner" and is not eligible for whistleblower protection. *Id.* at 433–34.  Olsen did not report the alleged misconduct at issue to her "supervisor" Ford, but rather to Gonzalez, the Area Superintendent for WCSD.  Although the *Colagiovanni v. CH2M Hill, Inc*., 2015 WL 1334900, at *9 (D. Nev. Mar. 20, 2015) states that reports of illegal activity must be made "outside of the company," the Nevada Supreme Court has never drawn this same conclusion.  The *Wiltsie* decision only states that reporting illegal activity to one's "supervisor" is not sufficient and that one must report illegal activity to the

"appropriate authorities."  In this case, Roger Gonzalez was the appropriate

authority, i.e. a public official outside of her place of work, i.e. Hug High, to whom to

report the allegations and because he was the Area Superintendent who oversaw

Ford.  WCSD expressly claimed that Olsen was subject to discipline ***because*** she

reported the allegations to Gonzalez and not Ford.  See Exhibits 21-22, and 25.

Couching the issue as a failure to report the marijuana incident to Ford is the same

as punishing Olsen for her actual reporting of the incident to Gonzalez.  In effect,

Olsen was simultaneously punished by WCSD for reporting and not reporting the

marijuana incident.

　　　As to any "mixed-motives" argument, i.e. that under *Allum v. Valley Bank of*

*Nevada*, 114 Nev. 1313, 1319-20, 970 P.2d 1062, 1066 (1998) a party must show

that their firing was proximately caused by the whistleblowing activity. In addressing

the incident involving the marijuana at issue, the Arbitrator's decision made plain

that WCSD retaliated against Olsen and fired her for reporting that she had been

made aware that WCSD employees were allegedly engaged in inappropriate

activities involving drugs at school: Exhibit 33 at 32: "Olsen reported a hearsay

statement and expected a fair investigation, and instead was terminated. This

discipline is retaliatory and overly punitive."

　　　**Conclusion**

　　　WHEREFORE, Olsen requests that the Court grant this motion and enter

Summary Judgment against the Defendants on liability in this case and enter a

Declaratory Order that the acts, policies, and practices of WCSD and Davis as

alleged herein violated Olsen's due process rights under the 14th Amendment to the Constitution and the Nevada Constitution.

**DATED** this Sunday, May 17, 2020:

By: _____

LUKE BUSBY, ESQ.
NEVADA STATE BAR NO. 10319
316 CALIFORNIA AVE.
RENO, NV 89509
775-453-0112
LUKE@LUKEANDREWBUSBYLTD.COM

28

1

**Exhibit List**

2

3
1 - Declaration of Trina Olsen.pdf
2 - (CONFIDENTIAL) May 6 2017 Wilson Texts_Redacted.pdf
4
3 - November 29, 2017 Murdock's email about incident.pdf
4 - June 2, 2017 Redacted - Ford and Duran Emails re MJ.pdf
5
5 - (CONFIDENTIAL) - Wilson Statement_Redacted.pdf
6
6 - May 17, 2017 Reassignment to Traner.pdf
7 - May 18, 2017 Virginis Doran Email to Roger Gonzalez.pdf
7
8 - May 25, 2017 Ford Emails RE Eval.pdf
9 - May 24, 2017 IDP.pdf
8
10 - May 25, 2017 Request for Meeting with Roger Gonzalez.pdf
9
11- (CONFIDENTIAL) May 31, 2017 Ford Email to Duran_Redacted.pdf
12 - June 1, 2019 email from RG to VD - bury herself deeper.pdf
10
13 - June 1, 2017 Email from Ford to VD and RG.pdf
11
14 - June 6, 2017 Olsen email to Gonzalez.pdf
15 - June 26, 2017 IDP.pdf
12
16 - July 19, 2017 LOA #1.pdf
13
17 - July 19, 2017  LOA #2.pdf
18 - July 19, 2017 IDP.pdf
14
19 - July 27, 2017 Leave w Pay.pdf
15
20 - Aug 22, 2017 Letter to Davis.pdf
21 - November 14, 2017 K. McNeill decision points appeal part 1.pdf
16
22 - November 14, 2017 K. McNeill decision points appeal part 2.pdf
23 - November 17, 2017 Olsen Letter to Davis.pdf
17
24 - May 7, 2018 Virginia Doran Email Replaced before fired.pdf
18
25 - June 28, 2018 Rec for Dismissal.pdf
26 - July 6, 2018 Notice to Arbitrate.pdf
19
27 - July 6, 2018 Grievance Protesting Recommendation to Discharge.pdf
20
28 - July 18, 2018 Whistleblower Complaint.pdf
29 - July 23, 2018 Pay Suspended.pdf
21
30 - July 27, 2018 Davis Letter Firing Olsen.pdf
22
31 - February 24, 2020 Traci Davis Deposition Transcript.pdf
32 - July 30, 2018 Letter From Doran.pdf
23
33 - December 13, 2018 Decision and Award.pdf
34 - December 27, 2018 Email and Draft Settlement Agreement.pdf
24
35 - January 9, 2019 Letter from Reich.pdf
25
36 - January 15, 2019 - Legal Recommended Course of Action.pdf
37 - January 24, 2019 Letter from Holland and Davis.pdf
26
38 - February 8, 2019 Revised LOA.pdf
39 - February 3, 2020 Letter from McNeill to Olsen.pdf
27
40 - WCSD Negotiated Agreement.pdf
28

1

2

**<u>CERTIFICATE OF SERVICE</u>**

3          Pursuant to FRCP 5, I certify that on the date shown below, I caused service to

4    be completed of a true and correct copy of the foregoing pleading by:

5

6    _____          personally delivering;

7    _____          delivery via Reno/Carson Messenger Service;

8    _____          sending via Federal Express (or other overnight delivery service);

9    _____          depositing for mailing in the U.S. mail, with sufficient postage affixed
                        thereto; or,

10

11     X          delivery via electronic means (fax, eflex, NEF, etc.) to:

12                        ROBERT A. DOTSON, ESQ.
13                        JUSTIN C. VANCE, ESQ,
                          5355 Reno Corporate Dr., Ste 100
14                        Reno, Nevada 89511
                          (775) 501-9400
15                        *Attorneys for Washoe County School District*

16
17                        KATHERINE F. PARKS, ESQ.
                          Thorndal Armstrong Delk Balkenbush & Eisinger
18                        6590 S. McCarran Blvd., Suite B
                          Reno, NV  89509
19                        *Attorney for Traci Davis*

20

21                        **DATED** this Sunday, May 17, 2020

22                                           By:  _____
23                                           LUKE BUSBY, ESQ.
                                             NEVADA STATE BAR NO. 10319
24                                           316 CALIFORNIA AVE.
25                                           RENO, NV 89509
                                             775-453-0112
26                                           LUKE@LUKEANDREWBUSBYLTD.COM
27                                           *ATTORNEY FOR PLAINTIFF*

28