# Exhibit 1

Exhibit 1

## DECLARATION OF TRINA OLSEN

I, Trina Olsen, declare that the assertions in this Declaration are true and correct, based upon my personal knowledge, and that I am competent to testify to the facts stated below:

1. I am the Plaintiff in the lawsuit Trina Olsen v. Washoe County School District ("WCSD") and Traci Davis, former Superintendent at WCSD, currently pending before the Federal District Court in Northern Nevada.

2. Since 1992, I have worked in various positions at WCSD, including as a certificated teacher and then Dean of Students.

3. I became a full-time teacher at WCSD in 1996. I was a probationary employee for three years until 1999, when I gained post-probationary status due to the fact that I was deemed to have performed my job satisfactorily.

4. I was a Physical Education teacher most of my career but I also was a reading interventionist, which involved helping children with reading difficulties get up to speed with reading;

5. I am currently an Assistant Principal at Wooster High School in Reno.

6. For the 2016-2017 school year, I was Assistant Principal at Hug High School, where I reported to and was supervised by Hug High Principal Lauren Ford ("Ford"). In my capacity as Assistant Principal at Hug High, I was part of the administrative team that was in charge of running Hug High, which included disciplining students in coordination with the administrative team at Hug High;.

7. I was issued a "Professional – Special" license by the State of Nevada in 2013 as a "School Administrator," which I renewed in December of 2016, and which allowed me to work in an administrative capacity for WCSD. A record of my license is attached hereto as Attachment A;

8. From the beginning of my tenure at Hug High I had concerns about discipline on campus. Most of Hug High's students were not from the wealthiest areas of Washoe County, and I perceived a culture of low expectations in terms of student behavior

that existed for these students. There were a lot of fights, gang activity, and bullying at Hug High that I did not feel was addressed by the leadership. I was a close witness to a student getting shot at Hug High by a school police officer on December 16, 2016, which reinforced my belief that students at Hug High were completely out of control. When I approached Lauren Ford regarding discipline issues at Hug, she would refuse to acknowledge the reality that the school she was running was rife with a lack of discipline and control, even after the December 16, 2016 incident;

9. I felt like the response to the shooting was to protect the image of WCSD and Ford in particular, who was a rising star in the District, she was named a Principal of the Year in 2016 by Washoe County School Board of Trustees, rather than address the underlying problem with lack of discipline at Hug High;

10. On May 5, 2017, I was informed by Patrick Rossi, a teacher at Hug High, of allegations that marijuana may have been provided to students by Jessica Wilson, Dean of Students at Hug High. When I confronted Wilson, Wilson admitted that she caught a student with marijuana, but had returned the marijuana to the student, and Wilson stated that she has seen Lauren Ford do the same thing;

11. I was concerned for Wilson as well as the students, Wilson was brand new in her job as Dean of Students, who is in charge of discipline, and I was concerned that Wilson was learning that she should brush things under the rug. I was also worried that Wilson would lose her job, and we had a good working relationship;

12. Shortly after being made aware of the allegations that Ford and Wilson had given drugs back to students, I discussed the matter with my mentor David Murdock, who was an assistant principal at Sparks at High School;

13. On May 8, 2017, I then discussed the matter with Brad Bodine, who was also an assistant principal at Hug High. Bodine recommended that I direct Wilson to self-report the incident to Lauren Ford;

14. On May 8, 2017, I directed Wilson to self-report the marijuana incident to Lauren Ford, which I believe she did on May 11, 2017;

15. On May 11 through 16, I started to get highly critical text messages and

emails from Ford about testing and the testing schedule among other things. It was clear to me that Ford was fighting me on every issue we discussed. After I requested that Wilson self-report to Ford, Ford immediately began to retaliate against me by undermining my ability to do my job;

16. On or around May 16, 2017, I emailed Roger Gonzales several times requesting to meet to discuss the incident, but he refused to meet with me;

17. On May 22, 2017, I was informed by Ford that she was going to remove positive elements in my employment evaluation that had already been finalized and submitted to the District for a month. Roger Gonzalez permitted Ford to retroactively change my employment evaluation such that all the positive elements were removed;

18. It was clear to me that Ford was upset at me for what I had done regarding the marijuana incident, but I never imagined that she would respond with accusations designed to completely destroy my career and reputation;

19. Rather than investigate Wilson and Ford regarding allegations that they gave drugs to back to students, WCSD employees began a campaign of character assassination and retaliation against me, which led to my being fired in early July of 2018 by Traci Davis;

20. I was accused of unprofessional conduct, dishonesty, and gross misconduct, among other things, by Ford even though these allegations were without any reasonable basis. While I admit that I have made some mistakes at work, I never did anything that would warrant such accusations and it was very clear to me why it was all happening, Ford curried favor with Roger Gonzalez, Virginia Doran, Deputy Superintendent Kristin McNeill, and Superintendent Traci Davis, and I did not. No matter what the truth of the matter was they were going to back Lauren Ford and not me. I feel like politics mattered more to them then protecting students and acknowledging the truth;

21. We ultimately prevailed at arbitration in December of 2018, but I was not rehired until January 9th of 2019 and was provided with backpay. Before I was rehired, WCSD tried to get me to sign a settlement agreement that contained confidentiality and non-disparagement clauses. I refused to sign this settlement agreement because I felt like WCSD was trying to sweep what happened to me under the rug. I felt like they wanted my

silence in exchange for my award. I felt like it was a gag order. I felt like if I couldn't tell my story then I went through the whole thing for nothing and they would continue to do it to other employees. I also felt like it would've kept me from talking to the board or talking about it at all. I felt like WCSD was still trying to extract concessions from me even though we had won at arbitration. This was the lowest point of the entire ordeal for me, I felt like no matter what happened WCSD would never admit the truth and would punish me for speaking about what happened. Not signing that settlement agreement was the hardest decision I have had to make in my life;

22. I am still suffering adverse consequences because of discovering and reporting the marijuana incident. Based on the terms of the Letter of Admonition issued by Ford after arbitration, I am required to have weekly meetings with my supervisor at Wooster High to discuss my "agendas," to submit notes from all of my meetings to my current supervisor, and I am precluded from assisting in certain matters involving testing for 3 years. These restrictions make my presence a liability to any principal who hires me and subjects me to undue scrutiny in performing my job;

23. WCSD permitted Ford to write and issue the Letter of Admonition after I prevailed at arbitration despite the fact that the Arbitrator found that Ford bore some of the responsibility for the testing issues of which I was accused. There is still a dark cloud following me around at WCSD because it is well known that I fought the "brass" at WCSD and that the "Good old boy" network at WCSD will make me and anyone who sides with me pay a price, if not now then later.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: 5-14-20 in Reno, Nevada.

By: *Trina Olsen*

Trina Olsen

# Attachment A

Attachment A

OLSEN - 000003

# State of Nevada
## License for Educational Personnel
### License No. 45778

*This License Certifies That*

*Trina Olsen*

Has complied with the prescribed rules and regulations of the Commission on Professional Standards in Education and that the Superintendent of Public Instruction has granted this license which authorizes the holder to provide service in the schools of the State of Nevada in the following areas :

| License | Grade Level | Original Endorsement Issue Date | Endorsements | License Issue Date | Expiration Date |
|---|---|---|---|---|---|
| Professional - Secondary | 7-12 | 06/17/1996 | Physical Education | 12/09/2016 | 12/13/2026 |
| Professional - Secondary | 7-12 | 06/22/1998 | Physical Education and Health | 12/09/2016 | 12/13/2026 |
| Professional - Special | K-12 | 12/06/2013 | School Administrator | 12/09/2016 | 12/13/2026 |

## Provisions to be satisfied

| Provisions | Required Due Date |
|---|---|

All provisions have been satisfied.

## Renewal Requirements

| Renewal Requirements | Required Due Date |
|---|---|

https://online.nvdoe.org/ 

11/13/2019
OLSEN - 000004