# Exhibit 17

# Exhibit 17

**Washoe County School District**
425 East Ninth Street * P.O. Box 30425 * Reno, NV 89520-3425
Phone (775) 348-0200 * (775) 348-0304 * www.washoeschools.net

Board of Trustees:   Angela Taylor, President * Katy Simon Holland, Vice President * Scott Kelley, Clerk *
Debra Feemster * Veronica Frenkel * John Mayer * Malena Raymond * Traci Davis, Superintendent

LETTER OF ADMONITION
HAND DELIVERED

July 19, 2017

Trina Olsen



RECEIVED

JUL 19 2017

Washoe County School District
Department of Labor Relations

Dear Mrs. Trina Olsen:

I am providing you this written notice that your conduct constitutes cause for potential disciplinary action under NRS 391.750 a. Inefficiency; c. Unprofessional conduct; d. Insubordination; e. Neglect of duty; i. Inadequate performance; k. Failure to comply with such reasonable requirements as a board may prescribe; l. Failure to show normal improvement and evidence of professional training and growth; p. Dishonesty; t. Gross misconduct; and Administrative Regulations, 4111.4 Ethical Standards; Administrative Procedure 5504 Grading: Incompletes / Appeals; and Administrative Procedure 5502 Academic Grading Policy High School and to give you an opportunity to correct your performance and conduct. An Investigatory Due Process (IDP) meeting was held on Wednesday, May 31, 2017 at 11:00am at the District office, 425 East Ninth Street.  Also in attendance at this meeting with you and me was Virginia Doran Labor Relations Manager. You notified Virginia Doran prior to our meeting that you would not have representation at the meeting.

The specific causes are as follows:

It is alleged that on Friday, April 7, 2017 you sent an email to Wendy Labon, Patrick Rossi and Patricia Newbrough giving a directive to issue a final and change a grade for the 14-15 school year violating administrative procedure 5504 and 5502. During the IDP meeting on May 31, 2017 you stated, "The statement you gave in the email was not a directive, it was something the principal had stated to you many times." You also stated, "I did not have knowledge of the policy I did not look it up, as a new VP you expected to get guidance from the principal. I could of learned in a conversation when Lauren received this email." You also stated, "I believed I knew the answer, I made the assumption that I believed I knew the answer so I didn't think to copy the principal, I clearly thought it was the correct policy, it was an error."  After further investigation as to you not having knowledge of the policy, statements reveal that you were informed that any grade change occurring outside the three week grading window must have principal and District approval.

It is alleged that you gave Sharon Black a notification of credit form to use to change a grade for the 15-16 school year, violating administrative procedure 5504 and 5502.  In the IDP meeting you stated, "The principal was in the hallway visibly upset, about a situation I knew nothing about. The principal handed me a stack of forms, that could have been one of them, I do not remember I just got this today in an email. You (Lauren Ford) directed me to go see teachers to change grades, I took them to the teachers



**WCSD 2492**

even though I didn't know what was going on and I was uncomfortable." You also stated, "Brad and Tristan can confirm that Lauren handed these to me and said to see if I could talk to teachers to see if this satisfied getting credit for the course." "It is so hard for me to answer questions, I do not know what forms were attached, I didn't follow up or submit forms to issue credits to students, the principal does that, I do not know how many forms the principal signed, but she signs them all." "I didn't know what A, B, C was." After further investigation as to being directed to see teachers to change grades, statements revealed that the directive given was that no student would receive credit and forms were handed to Brad Bodine. Further investigation as to never signing approval for grade changes, I found eight such approvals signed by you.

We moved to item 4 on the IDP because the first two items related to the 4th. It is alleged that you sent an email, Friday, May 12th to Brad Bodine and Patrick Rossi asking for direction and credit to be issued, on an issue that was discussed in a meeting on May 10th with Elaine Lancaster, Wendy Labon and Brad Bodine where I stated that Brad Bodine would review all A+ courses to ensure all policies were followed. You stated in the meeting on May 10th that you do not know the policy around A+ for AE credits, OLA credits and incomplete learning. You sent an email to Brad Bodine on May 12th about Juan. You stated, "He has access to A+. I don't want Juan in any trouble for not being trained. Can you please work with Juan and Patty in making sure that he gets the info he needs to work with A+? He also needs the policies for incomplete learning (like not contacting teachers about past classes). You sent an email to Brad Bodine and I on May 17th stating that, "Given the questions that are arising about the Incomplete Learning Process that was rolled out by admin in a staff meeting, I do not want to be involved with moving forward with this until our admin team vets the process and provides written guidelines for teacher and A+ teachers. On Friday, March 3, 2017 you presented a PowerPoint explaining this process. In the IDP meeting you stated that "I didn't have specifics about why Wendy had to be removed from A+, I was clueless on the directives that Lauren and Brad gave to Wendy I didn't have details as to why I didn't know why." "We did the incomplete learning process roll out as a team." You also stated, "I took the lead on this process because of a directive from my principal." "I started sensing are people making mistakes, Wendy and myself made mistakes." "Training beyond the roll out document was needed, I am still unclear on the details of this process. I wanted to take a step back and vet this process, give written guidance, there were red flags." When shown the slide from the presentation with written guidance, you stated, "Yes I wrote this and can refresh from this." After further investigation as to your understanding of Wendy Labon's errors, emails, meetings and statements indicate that errors were brought to your attention and mistakes can be interpreted from the emails. Statements also conclude that you were explained that the difference between AE/ AE OLA credit were explained to you on two occasions by Brad Bodine. Statements and emails also conclude that the Incomplete Learning process was designed by you and your team and vetted through the admin team. In an email to Roger and me dated February 26, 2017 you indicated the team for incomplete learning was Trina Olsen Patrick Rossi, Patty Newbrough and Wendy Labon. The only staff that did not follow the written guidance given in the power point you created for the Incomplete Learning process were you and Wendy Labon, an employee you directly supervise. All email correspondence that was sent to teachers containing directions on the incomplete learning process came from you and included the team members, Patrick Rossi, Patty Newbrough and Wendy Labon. You copied me and only the VP evaluator of each content area on the emails, further demonstrating your leadership of the Incomplete Learning Process and failure to follow your own guidance to staff.

It is alleged that you failed to get my approval prior to putting in Lorrie Foley's evaluation that you recommended her to be placed on a FAP. After reviewing the narrative you sent me an email on April 8th, and I told you that Lorrie could not be placed on an FAP. In an email received on April 20th and in the meeting held on April 27th with Lorrie Foley, Elaine Lancaster, WEA Representative and me you stated that Laura Pincollini gave you guidance and you followed it, to include the FAP. In the IDP meeting you stated, "I was directed by Lauren Ford that I didn't meet the dead lines from Roger so I could not give Lorrie a minimally effective evaluation." "On April 16th I received an email from Laura stating that Lauren said yes to a FAP." You also stated, "That on April 8th in the hallway that when Lauren stated I did not have enough evidence to do an FAP that I had an abundance of evidence she questioned my due diligence as a VP. I was doing my job. You didn't say no you just said not enough evidence. I felt you were doubting my evidence not the FAP. You (Lauren) did not reply to my emails about putting Lorrie Foley on a FAP." When asked if you attended the evaluation trainings you stated, "Yes." When asked if you looked at the guidance resources in MyPGS you stated, "I went to you (Lauren) and you said you didn't know, I did not look at the guidance I went to my principal and she didn't know." "I was doing my job, I never heard no from you, I got an email from Laura P. that said you had approved the FAP. I made the assumption you met with her and approved the FAP." You also stated that, "I brought up in a meeting with Laura and Revae that I can't give a minimally effective evaluation can I do a FAP. Then I sent you the email on April 20th." Further investigation revealed that you have attended trainings on teacher evaluation and that you did not review the guidance in the MyPGS system. Further investigation revealed that when I stated, "you do not have enough evidence to do an FAP." you assumed that this response was not a no to the FAP but questioning your evidence. Further investigation also indicates that you signed and finalized the evaluation for Lorrie Foley on April 12, 2017 without my approval and prior to your email correspondence with Laura Pincollini.

It is alleged you failed to report to me an incident reported to you on May 8th involving a student, staff member and drugs. On May 8th Patrick Rossi reported to you that he was told by Sabrina Cellucci that Jessica Wilson gave drugs back to a student. You stated to Jessica Wilson that you spoke with a trusted mentor/confidant from another school. You did not state this confidant's name. You directed Jessica to self-report what she did to me. You did not report this incident to me, school police or any other administer on Hug Campus. In the IDP meeting you stated, "Patrick reported Jessica Wilson gave a student back drugs, he was scarred and didn't know what to do so he told me what happened." You also stated, "You were scared and worried about Jessica, wanted to talk to her if it was true." You also stated, "You went to Jessica first because it was the professional thing to do. When I did Jessica stated I saw Lauren do the same thing not too long ago, I was taken back. An allegation against Lauren scared me, it's about my boss I thought about what to do, Roger or administration what do I do it is a sensitive situation involving a supervisor's integrity." You then stated, "I reported Jessica's allegation about Lauren to Brad, my campus mentor, he told me to go to Jessica and have her self-report that's between them." "I looked up guidance to report and found I had a 15 day time line to report the incident that is why I sent the email to Roger on 5/25." You also stated, "Understand her integrity is what I was concerned about, that's why I went to Brad." You also stated, "I brainstormed with Dave Murdock my personal friend and mentor as a professional over discipline for years what to do." You then stated, "I developed options with my mentor, 1- go to Roger, 2 - talk with Brad or 3 - talk to Lauren. I didn't want to damage the principal's reputation so I went to Brad." You also stated, " I was trying to protect myself, I reported this to a coworker, Brad, and sent an email about filing a grievance against Principal Ford on 5-25." When asked if you confirmed this allegation with Jessica you responded, "I did". When asked

about the IDP process and why you didn't come to the principal you stated, "I wrote an IDP this year because Lauren said to, I didn't realize or have the knowledge I couldn't talk to Jessica." You also stated, "I did not talk to the student and that you could not remember if and who reported to you that the teacher was being bullied or harassed or that there could be retribution taken against the teacher about this incident. You also did not remember who told you it was Sabrina Celluci." After further investigation statements conclude that Patrick Rossi did not know for sure if the wallet was given back containing marijuana. Further investigation indicated that in your requested evaluation revision document emailed on April 19th to me, you stated "Trina learned to write an IDP letter; she followed protocol and worked with her principal and the district in a timely, professional manner." Further investigation also indicated that you were advised by Brad Bodine to speak with me and let me know what was said. Further investigation also indicated that when you confronted Jessica Wilson about if she suspended the student Jessica indicated no and that I would probably do the same thing. You did not ask for further clarification of this statement. Jessica stated this in response to your request to suspend the student. In Jessica's professional opinion she did not feel that she should suspend the student out of school.

It is alleged that on May 5th you responded to a student issue. It is alleged that while Mary Caraway was on the phone speaking to the 911 operator you allegedly took the phone out of her hand to speak to the operator. In the IDP meeting you responded, "I put out my hand for the phone when Mary could not answer the paramedics questions on the phone." You also stated, "Tristan was in the room and that he could give a statement about what occurred." After further investigation, two statements indicate that you took the phone from Mary. Tristan could not write a statement about this incident as he did not see the interaction between you and Mary.

It is alleged that you failed to supervise staff under your required supervision as demonstrated by: the list of students that Wendy Labon sent to Rise. Your alleged lack of attendance at Special Education teacher meetings and at Senior Special Education Action Committee (SSAC) meetings. Your alleged cancelation of meetings with the SPED department leaders from February 14th to the end of the school year because of the 3 weeks of testing. In the IDP meeting you presented a calendar cancelation dated Tuesday, May 9th. You stated, "You had verbal conversations with me about the Rise trip." You also stated that I was copied on an email from Wendy about students signing up to go on the Rise trip." You also stated, "I did not know I was supposed to vet the list. I trusted the teachers whoever are our campus leaders and the lead counselor. I didn't realize you wanted me to vet the list." You also stated, "Hindsight I would like to see the list, I wouldn't deny any kid going." You also stated, "I only missed SPED meetings for 1- HS CAP meeting, mandatory testing meeting and that one is rescheduled for 5-15." You also stated, "I was at them they are a priority they were from 3-4 afterschool, I also popped into MTSS meetings and held monthly leader meetings, I am a new AP with too many responsibilities. I felt horrible asking to take anything away." You also stated, "The SSAC, I created and co-led with Wendy Labon. We created the agendas together." You also stated, " I tried to discuss my workload with you many times, I worked myself to death, you were not very supportive, you told me we are all busy Trina" you also stated, "I do not know anyone else who has my responsibilities." When asked if you reviewed the High School Assistant Principal Summary Job Description you stated, "Probably, back when I applied for the pool." When asked if you remembered your interview for Hug VP and if you remembered any questions you were asked you stated, "Not questions but general ideas of what was discussed." After further investigation of your correspondence with Rise I was not copied on any of the emails you or

Wendy sent to Rise. Your email to Victor on April 7, 2017 indicates that the students listed were, "struggling and either failing all of their classes right now or have vanished." You did not indicate to Victor that students were signing up by choice.

Performance Expectations
I expect you to:
1. Attend a weekly meeting with the principal where you will submit and review all agendas prior to holding meetings with staff. These meetings will be established by the Hug HS Principal. Ms. Cristina Oronoz.
2. Attend a weekly Vice Principal PLC and review minutes form those meetings with the Principal at your weekly meetings.
3. Copy Ms. Oronoz on all emails you are sending to teachers.
4. You may not email or contact or direct a teacher to contact by phone or email any department or school in WCSD without Ms. Oronoz's written approval. You must submit in writing why you want to contact this department or school and vet all items prior to giving them to me for approval.
5. Not email teachers about issuing credits.
6. Have Ms. Oronoz's written approval for all guidance in regards to teacher evaluations and issuing credits.
7. Attend a class taught by Labor Relations Department on employee discipline. Register for the class in MyPGS and confirm date with Ms. Oronoz.
8. Invite Ms. Oronoz to all meetings under your supervision; SSAC, SPED, SPED department lead and MTSS.
9. Submit minutes from all meetings you are holding and review them with Ms. Oronoz at your meetings.
10. Follow the written guidance on evaluations that has been developed by the Hug leadership team. You must follow all guidance and expectations on the evaluation process at Hug and may not deviate from the teams approach to evaluations.
11. Submit to Ms. Oronoz all evaluations 10 days prior to the district due date for review and approval.
12. Report to Ms. Oronoz all incidents involving staff and students that are in violation of District Policy, state NRS or of a safety concern and you are directed to not consult outside mentors for guidance. You must follow all District Guidance on employee discipline.
13. Follow all verbal and written guidance given to you from the Principal, District Departments and Vice Principals.
14. Work collaboratively with the principal, vice principal and leadership team on all projects.
15. Not solicit or follow guidance regarding administrative procedures from teachers.

You must make these improvements immediately.

Assistance
In order to assist you in meeting these expectations, Ms. Oronoz will:

1. Set up the weekly calendar invite for weekly meetings.
2. Help you find the class taught by the Labor Relations Department in MyPGS.
3. Assist you in calendaring all responsibilities that fall under your supervision to ensure they are completed.

In addition, I strongly encourage you to:
1. Review the teacher evaluation guidance in MyPGS, prior to your first meeting with Ms. Oronoz.
2. Have a yearly calendar drafted prior to your first meeting with Ms. Oronoz.

This is a serious situation. Continuation or repetition of the deficiencies as stated in this document may result in suspension, demotion, dismissal, or a recommendation not to reemploy.

Sincerely,

Lauren Ford
Area Superintendent, Former Hug HS Principal

cc: Dawn Huckaby, Chief Human Resources Officer
    Roger Gonzalez, Area Superintendent
    Cristina Oronoz, Hug HS Principal
    Zack Lewis Human Resources Technician

I acknowledge receipt of this letter of admonition.

_____  7-19-17
Employee signature                  Date



**Washoe County School District**
425 East Ninth Street * P.O. Box 30425 * Reno, NV 89520-3425
Phone (775) 348-0200 * (775) 348-0304 * www.washoeschools.net

Board of Trustees: Angela Taylor, President * Katy Simon Holland, Vice President * Scott Kelley, Clerk * Debra Feemster * Veronica Frenkel * John Mayer * Malena Raymond * Traci Davis, Superintendent

November 14, 2017

Trina Olsen
1400 Belford Road
Reno, NV 89509

RE: ADM G17-18#001 Part 1

Dear Ms. Olsen,

First, thank you for your patience and the acceptance of an extension for your grievance. It took me additional time to thoroughly go through all of the additional documents you submitted during and after your hearing on September 28, 2017. This is to formally notify you that your grievance is denied, and the Letter of Admonition of July 19, 2017 is sustained.

Based on my review of the contract and allegations, and upon review of the information presented by you in the Grievance Appeal Hearing including emails, documents, text messages, etc. held on Thursday, September 28, 2017, I have determined that you did violate the following:

> NRS 391. 750 (a.) Inefficiency; (c) Unprofessional conduct, (d)insubordination, (e)Neglect of duty, (i) Inadequate Performance, (k) Failure to comply with such reasonable requirements as a board may prescribe, (l) Failure to show normal improvement and evidence of professional training and growth and (p) Dishonesty; (t) Gross misconduct and Administrative Regulations 4111.4 ( Ethical Standards; Administrative Procedure 5504 Grading: Incompletes/Appeals; and Administrative Procedure 5502 Academic Grading Policy High School).

I reviewed the above documents, as well as the findings in the Investigatory/Due Process Hearing, and found that you did the behaviors outlined in the Letter of Admonition. I will be providing excerpts of the allegation stated in the LOA dated July 19, 2017 as well as excerpts from your rebuttal comment tied to the specific LOA allegation. I have provided information as to my "Decision Point" within each area.

**Letter of Admonition:** It is alleged that on Friday, April 7, 2017 you sent an email to Wendy Labon, Patrick Rossi and Patricia Newbrough giving directions to issue a final and change a grade for the 14-15 school year violating administrative procedure 5504 and 5502. During the IDP meeting on May 31, 2017 you stated, "The statement you have in the email was not a directive, it was something the principal had stated to you many times". You also stated, "I did not have knowledge of the policy I did not look it up, as a new VP you expected to get guidance from the principal. I could of learned in a conversation when Lauren received this email." You also stated, "I believed I knew the answer, I made the assumption that I believed I knew the answer so I didn't think to copy the principal, I clearly thought it was the correct policy. It was an error." After further investigation as to you not having knowledge of the policy, statements reveal that you were informed that any grade change occurring outside the three week grading window must have principal and District approval.



It is alleged that you gave Sharon Black a notification of credit form to use to change a grade for the 15-16 school year, violating administrative procedure 5504 and 5502. In the IDP meeting you stated, "The principal was in the hallway visibly upset, about a situation I knew nothing about. The principal handed me a stack of forms, that could have been one of them, I do not remember I just got this today in an email. You (Lauren Ford) directed me to go see teachers to change the grades, I took them to the teachers even though I didn't know what was going on and I was uncomfortable." You also stated, "Brad and Tristan can confirm that Lauren handed these to me and said to see if I could talk to teachers to see if this satisfied getting credit for the course." It is so hard for me to answer these questions, I do not know what forms were attached, I didn't follow up or submit forms to issue credits to students, the principal does that, I do not know how many forms the principal signed, but she signs them all". I didn't know what A, B, C, was." After further investigation as to being directed to see teachers to change grades, statements revealed that the directive given was that no students would receive credit and forms were handed to Brad Bodine. Further investigation as to never signing approval for grade changes, I found eight such approval signed by you.

**Rebuttal 1 and 2: Alleged email directive to issue a grade change**
- The email was clearly not a directive
- Mrs. Ford states in her findings, "further investigation as to having knowledge of the policy, statements reveal that you were informed that any grade change occurring outside of the three week grading period window must have principal and district approval. "
    - **This statement about having knowledge of the policy does not match the original allegation and should be expunged.**
    - The email in question stated, "the principal owns the gradebook and the principal can approve the grade change…", clearly showing principal approval was needed
    - The email was a confirmation of what I learned from Mrs. Ford, as evidenced by the comment in the email, "Mrs. Ford fully supports" …and was parent of the Incomplete Learning Initiative that Mrs. Ford promoted and approved as a whole school initiative.
    - If the grade change form must be approve3d by the principal, Mrs. Ford would receive these forms from the registrar for her approval as a protocol. I am not sure if that occurred or if credit was awarded.

**Decision Points:** *In reviewing the email in question, I did find it to be directive in nature in point of fact coming from an assistant principal sent to staff members as well as the comment, "Let's get him through this". In reviewing statements, it was clear you had been provided information regarding grade change policy as well as who was authorized to approve the grade changes outside of the three-week window. As for your request to have a statement "expunged" because it did not match the original allegation, it is exactly as stated in the IDP process, the investigation process, that is was found you had received information regarding the policy therefore this statement will remain in the LOA. As well through the IDP as well as the documents I reviewed, you in fact did sign grade approval forms.*

**Letter of Admonition:** Excerpts and the entire context may be found in the actual LOA dated July 19 2017

It is alleged that you failed to get my approval prior to putting in Lorrie Foley's evaluation that you recommended her to be placed on a FAP. After reviewing the narrative, you sent me an email on April 8th and I told you that Lorrie could not be placed on a FAP. In an email received on April 20th and in the meeting held on April 27th with Lorrie Foley, Elaine Lancaster, WEA Representative and me you stated that Laura Pincollini gave you guidance and you followed it, to include the FAP. In the IDP meeting you stated, "I was directed by Lauren Ford that I didn't' meet the dead lines from Roger so I could not give Lorrie a minimally effective evaluation." "On April 16th I received an email from Laura stating that Lauren said yes to a FAP." You also stated, "That on April 8th in the hallway that when Lauren stated I did not have enough evidence to do an FAP that I had an abundance of evidence she questioned my due diligence as a VP. I was doing my job. You didn't say now you just said not enough evidence. I felt you were doubting my evidence not the FAP. You (Lauren) did not reply to my emails about putting Lorrie Foley on a FAP." See the rest of the narrative in the actual LOA.

**Rebuttal 4: Allegation that stated I failed to get approval to put FAP on an evaluation. Excerpts and the entire context can be found within your Rebuttal document.**
- Emails asking Ms. Ford about the inclusion of the FAP as well as my concern for her overall evaluation were not answered
- I was never told by Mrs. Ford not to include a FAP, as confirmed at the IDP hearing. I was only told she was "not sure if I had the evidence", but I showed her that I did have sufficient evidence.
- Mrs. Foley emailed me on 4/8/17 and copied Mrs. Ford asking about the FAP. I responded and copied Mrs. Ford explaining that she would have a FAP. Again, Mrs. Ford did not respond to Mrs. Ford telling me or Mrs. Foley that we would not be doing a FAP. Clearly as evidenced in this email that was copied to Mrs. Ford I felt I had her full support.
- See Your Rebuttal #3 for the remaining three bullet points.

*Decision Points:* *I find your email on March 4, 2017 to be telling in this instance, understanding that you had attended evaluation trainings. If you knew by March 4th that you were "behind the ball in terms of making this viable on her eval." then that begs the question, why would you believe a FAP is appropriate at this time? Through a review of email correspondence between you and Mrs. Ford, although there was no response, though speaking with Mrs. Ford, it was evident she had spoken to you about not having enough evidence to complete a FAP and you interpreted that to mean she was questioning your evidence. I would argue that you being an assistant principal should have known that you cannot give a teacher a FAP with an effective rating. The entire idea of completing a FAP, would be to support an underperforming teacher, not an effective teacher.*

**Letter of Admonition: Incomplete Learning Initiative (Excerpts and for complete record see LOA)**
We moved to item 4 on the IDP because the first two items related to the 4th. It is alleged that you sent an email, Friday, May 12th to Brad Bodine and Patrick Rossi asking for direction and credit to be issued on an issue that was discussed in a meeting on May 10th with Elaine Lancaster, Wendy Labon and Brad Bodine where I stated that Brad Bodine would view all A+ courses to ensure all policies were followed.

You stated in the meeting on May 10th that you do not know the policy around A+ for AE credits, OLA credits and incomplete learning. You send an email to Brad Bodine on May 12th about Juan. You stated, "He has access to A+. I don't want Juan in any trouble for not being trained. Can you please work with Juan and Patty in making sure that the gets the info he needs to work with A+? He also needs the policies for incomplete learning.

After further investigation as to your understanding of Wendy Labon's errors, emails, meetings and statements indicate that errors were brought to your attention and mistakes can be interpreted from the emails. Statements also conclude that you were explained that the difference between AE/AE OLA credits were explained to you on two occasions by Brad Bodine. Statements and emails also conclude that the Incomplete Learning process was designed by you and your team and vetted through the admin team. In an email to Roger and me dated February 26, 2017 you indicated the team for incomplete learning was Trina Olsen, Patrick Rossi, Patty Newbrough and Wendy Labon. The only staff that did not follow the written guidance give in the power point you created for the incomplete learning process were you and Wendy Labon, an employee you directly supervise. All email correspondence that was sent to teachers containing directions on the incomplete learning process came from you and included the team members, Patrick Rossi, Patty Newbrough and Wendy Labon. You copied me and only the VP evaluator of each content area on the emails. Further demonstrating your leadership of the incomplete Learning Process and failure to follow your own guidance to staff.

**Rebuttal 3: Alleged misconduct regarding incomplete learning.** (Excerpts and entire context can be found in your Rebuttal Statement)
- During this IDP hearing, Mrs. Ford could not answer my question as to what she was specifically addressing as misconduct in this bullet.
- Mrs. Ford seems to be alleging that I was solely responsible for the incomplete learning initiative. I could not have implement3d an initiative as large as incomplete learning without the principal's direct involvement and guidance. Mrs. Ford is the principal and responsible in making sure initiatives follow district guidelines. This initiative was a whole-school presentation and our entire Spring intersession was developed around this process. I presented this initiative to the admin several times at meetings and by email and Mrs. Ford co-led the presentation to staff.
- It is not misconduct to lead an initiative promoted and approved by my principal. I was acting as her assistant a whole-school initiative is always approved and vetted by the principal.

*Decision Point: In reviewing documents associated with the Incomplete Learning Initiative, it is clear to me that you were associated as the leader of this initiative along with your team to include three other individuals. You were provided guidance by Brad Bodine on policy and A+ credits, it seems that in reviewing emails, you did not follow this guidance. As early as February 7th, Mrs. Ford expressed her concern to you and your team in regards to sped students and A+ courses. Emails I viewed also included February 20th email from you to Mrs. Ford informing her of a PowerPoint you were to present to admin team. Mrs. Ford in fact also sent an email late in January, 2017 (31st) informing two employees, one in which I understand you directly supervise, to clearly articulate which courses were not credit bearing courses and had you as the contact about how to use a supplemental curriculum. There is also another*

email dated February 6, 2017 in which Mrs. Ford answers a question from the employee you supervise and writes, "___I think we need to meet about this". There is another email dated May 3, 2017 in which Mrs. Ford clearly tells the employee you supervise she has concerns. All of this evidence leads me to the conclusion, you were accountable for the Incomplete Learning Initiative and should have followed through on your responsibility to the conclusion of the program. Stating that you did not want to continue with the program initiative in an email dated May 17*th* lacks taking responsibility for the program and its mistakes and implementation errors.

**Letter of Admonition: Excerpts and the entire context can be found in the LOA dated July 19, 2017**
Is alleged you failed to report to me an incident reported to you on May 8*th* involving a student, staff member and drugs. On May 8*th* Patrick Rossi reported to you that he was told by Sabrina Cellucci that Jessica Wilson gave drugs back to a student. You stated to Jessica Wilson that you spoke with a trusted mentor/confidant from another school. You did not state this confidant's name. You directed Jessica to self-report what she did to me. You did not report this incident to me, school police or any other administrator on Hug Campus. In the IDP meeting you stated, "Patrick reported Jessica Wilson gave a student back drugs, he was scarred and did not know what to do so he told me what happened. " You also stated, you were scared and worried about Jessica, wanted to talk to her if it was true." You also stated, "You went to Jessica first because it was the professional thing to do. When I did Jessica stated I saw Lauren do the same thing not too long ago, I was taken aback. An allegation against Lauren scared me, it's about my boss I thought about what to do, Roger or administration what do I do it is a sensitive situation involving a supervisor's integrity. "

**Rebuttal 5: Alleges I failed to report an incident regarding a staff member and drugs**
- The allegation was: "you did not report this incident to me, school police or any other administrator on campus"
    - At the IDP meeting, I explained our Dean admitted to me that she gave a student back drugs, and then alleged that did it because she saw Principal Lauren Ford do the same thing. I did not report this incident directly to Mrs. Ford because of this allegation against her. I was intimidated to report an allegation that was against my principal to her directly. This is why I reported to Brad Bodine and Roger Gonzalez instead of Mrs. Ford.
    - At the IDP hearing I provided that I reported this incident to Hug Assistant Principal Brad Bodine. I had also reported the dean's allegation against Mrs. Ford to area superintendent Roger Gonzalez within the timeline for reporting per the WSPA negotiated agreement. I reported this incident using a staff complaint form as guided by Mr. Gonzalez.
- Mrs. Ford makes many other statements in her findings about this allegation regarding the investigation none of which match the original allegations of failure to report. All of these statements should be expunged.

*Decision Point: In reviewing statements it was clear to me you did not follow correct protocols put into place for reporting such incidences. You at no time went to Mrs. Ford to report what had been told to*

you by Dean Jessica Wilson. You state that you went to Brad Bodine to provide him this information and he told you to go to Mrs. Ford, and you did not. As well, you clearly understood the IDP process as evidenced in your own statement in regards to your evaluation and your request to review "negative elements" in a letter dated April 19th. This is important to me because you should have known not to discuss the issue further with Jessica Wilson and in fact you did. You used poor professional judgement in not going to the principal in regards to this issue and made conclusions without seeking facts in the matter. As for your request to have a statement "expunged" because it did not match the original allegation, it is exactly as stated through the IDP process, the investigation process, that is was found you had demonstrated poor professional judgement in this matter therefore all information will remain in the LOA.

### Letter of Admonition: Phone incident
It is alleged that on May 5th you responded to a student issue. It is alleged that while Mary Caraway was on the phone speaking to the 911 Operator you allegedly took the phone out of her hand to speak to the operator. In the IDP meeting you responded, "I put out my hand for the phone when Mary could not answer the paramedics questions on the phone." You also stated "Tristan was in the room and that he could give a statement about what occurred." After further investigation, two statements indicated that you took the phone away from Mary. Tristan could not write a statement about this incident as he did not see the interaction between you and Mary.

### Rebuttal #6: Excerpts see your entire Rebuttal for complete context
- I waited for the secretary to give the operator information requested and complete the breathing count with the operator
- At the pause, I held out my hand and said, "Mary" I then reached for the phone and she put it in my hand.
- I was the administrator in charge of school safety and code blue.

*Decision Point: I do find that this incident to be unable to corroborated with the evidence I have been provided, therefore I am recommending it be removed from the Letter of Admonition.*

### Letter of Admonition: Excerpts provided for entire context see LOA dated July 19, 2017
It is alleged that you failed to supervise staff under your required supervision as demonstrated by the list of students that Wendy Labon sent to RISE. Your alleged lack of attendance at Special Education teacher meetings and at the Senior Special Education Action Committee meetings. Your alleged cancelation of meetings with the SPED department leaders from February 14th to the end of the school year because of the 3 weeks of testing. In the IDP meeting you presented a calendar cancellation dated Tuesday, May 9th. You stated, "You had verbal conversations with me about the Rise trip." You also stated that I was copied on an email from Wendy about students signing up to go on the Rise trip." You also stated, "I did not know I was supposed to vet the list. I trusted the teachers whoever are our campus leaders and the lead counselor. I didn't realize you wanted me to vet the list."

**Rebuttal #7 Alleges I failed to supervise staff because of an email list of kids that Wendy Labon sent to Rise; I lacked attendance at sped meetings and senior sped action committee meetings; and I canceled**

**sped department meetings beginning Feb 14th. (Excerpts and the entire context can be found in your Rebuttal)**
- Re: attendance at sped teacher meeting and action committee meetings:
    - I proved I was innocent of all these allegations and attended or organized nearly every meeting all year for both groups. No findings from Mrs. Ford were listed about this allegation.
- Re: cancelation of sped department leader meetings from Feb 14th until the end of the year due to testing: I proved that her allegation was Mrs. Ford's error, as the cancelation noticed was dated the week before EOCS began in May and only canceled two meetings all year due to EOCs, but the email invite was created on Feb 14th and that was the date she was reading. No findings from Mrs. Ford were listed about this allegation.
- Re: supervision of Wendy Labon and list of students sent to Rise:
    - Mrs. Ford's findings indicate I emailed Mr. Sherbondy and stated the students listed were, "struggling and either failing all classes or have vanished. You did not indicated to Victor that the students were signing up by choice." This is out of context. This comment was regarding a list of students that were sent to Victor Sherbondy long after the field trip to Rise in March. This was not a list of students that "signed up". Mrs. Ford believes this quote regards the list of kids that attended the field trip, but it is actually simply a list of candidates that could be a good fit for Rise after graduation and these students were not "sent to Rise"

*Decision Point: After reviewing several emails as well as Hug High School Administrative Role and Responsibility document, I find this allegation sustained. The most compelling evidence to me were the emails between you and Mr. Sherbondy at RISE; I did not see Mrs. Ford included on any of those emails. This is serious as the principal should have been included in these having to do with seniors and graduation/cohorts. It also lends me to believe you do not have a grasp as to why this issue is serious; sending a list of students enrolled at Hug HS that are in your 2017 cohort to Rise so they can get "over to RISE right away" (email dated April 8, 2017). As well, in reviewing the Role and Responsibility document, it was clear to me that all administrators at Hug HS had responsibilities assigned to them in relation to their position as administrators and that no one had greater duties than others.*

In conclusion, I find the Performance Expectations to be in line with the needed areas of improvement for you as an administrator. I do not recommend any changes as such.

Sincerely,

Kristen McNeill, Ed. D
Deputy Superintendent

Cc:	Dawn Huckaby, Chief Human Resources Officer
	Roger Gonzalez, Area Superintendent
	Christina Oronoz, Principal Hug HS
	Virginia R. Doran, Labor Relations Manager