# Exhibit 22

# Exhibit 22

**Washoe County School District**
425 East Ninth Street * P.O. Box 30425 * Reno, NV 89520-3425
Phone (775) 348-0200 * (775) 348-0304 * www.washoeschools.net

Board of Trustees: Angela Taylor, President * Katy Simon Holland, Vice President * Scott Kelley, Clerk * Debra Feemster * Veronica Frenkel * John Mayer * Malena Raymond * Traci Davis, Superintendent

November 14, 2017

Trina Olsen

RE: ADM G17-18#001 Part 2

Dear Ms. Olsen,

First, thank you for your patience and the acceptance of an extension for your grievance. As noted in my other correspondence regarding the first LOA, it took me additional time to thoroughly go through all of the additional documents you submitted during and after your hearing on September 28, 2017. This is to formally notify you that your grievance is denied, and the Letter of Admonition of July 19, 2017 is sustained.

Based on my review of the contract and allegations, and upon review of the information presented by you in the Grievance Appeal Hearing including emails, documents, text messages, etc. held on Thursday, September 28, 2017, I have determined that you did violate the following:

> NRS 391.750 (a.) Inefficiency; (c) Unprofessional conduct, (d)insubordination, (e)Neglect of duty, (i) Inadequate Performance, (k) Failure to comply with such reasonable requirements as a board may prescribe, (l) Failure to show normal improvement and evidence of professional training and growth and (p) Dishonesty; (t) Gross misconduct and Nevada Testing Primer, Nevada Student Assessment Spring 2017 EOC presentation, Email sent on Friday, April 7, 2017, NDE Test Security and Administration training for spring 2017 and HS Deputy Superintendent Weekly email send on April 6, 2017.

I reviewed the above documents, as well as the findings in the Investigatory/Due Process Hearing, and found that you did the behaviors outlined in the Letter of Admonition. I will be providing excerpts of the allegation stated in the LOA dated July 19, 2017 as well as excerpts from your rebuttal comment tied to the specific LOA allegation. I have provided information as to my "Decision Point" within each area.

**Letter of Admonition: Excerpts to the LOA dated July 19, 2017**
It is alleged you sent an email to all Hug Staff on May 11, 2017 that included secure testing materials, student identifying information. You state in the email, "Please keep this list confidential as you reference it so sensitive information is not seen by our students". After receiving an email form me at 6:21 am stating that I could not open the excel documents, you sent an email stating that, "This document lists every student test (we have 2400+) and where/when they are testing for each test." During the IDP meeting on June 26, 2017 you stated, "Yes this is true. It slipped my mind I didn't work with those columns. I forgot I had sensitive items in the document, did not occur to me." After further investigation it is confirmed that you sent the email to Hug staff with secure testing materials included. In addition, you were dishonest in your email communication to me on May 11, 2017 when you stated,



that "The document lists every student test (we have 2400÷) and where/when they are testing for each test." The document included more than the student, and where and when they were testing.
**Rebuttal 1: Alleges an email was sent to staff that included secure testing information. Excerpts are included. Refer to your Rebuttal for the entire content.**
- I am accountable for accidently sending an email with secure information on the attachment that had 24 total columns. Mrs. Ford vetted and approved this email and attachments and is equally responsible for this error.
- I sent an email asking for Mrs. Ford's testing support and indicating my fear of not being ready for testing. Also, see Mrs. Ford's follow-up to that request for help in attachment #3.

**Decision Point:** *After reviewing several email exchanges between you and Mrs. Ford (May 4, May 5, May 11, 2017), statements from Hug HS staff members, to include the email in question that was sent on May 11, 2017 to all Hug HS staff, I find this allegation sustained. You, as the Testing Coordinator, should have detailed to your supervisor exactly what information was being sent out in this email and you did not. The fact that you placed in the email to staff, "Please keep this list confidential as you reference it so sensitive information..." leads me to the conclusion that you were aware of the contents and what was being sent to staff or at the very least, you SHOULD have known. As well, when Mrs. Ford on her reply back wrote, "I could not open the 2 excel documents. What's the difference between them", you did not in your reply back state exactly what was included in the 24 columns. As well, in your Rebuttal, you wrote, "Mrs. Ford vetted and approved this email and attachments and is equally responsible for this error." Mrs. Ford was in fact trusting your ability as the Testing Coordinator to provide her accurate information when she DID ask, "What's the difference between them." You also take exception Mrs. Ford in the LOA using the term "dishonesty", however, the fact is that you did not provide Mrs. Ford an honest accounting of what was included the staff email dated May 11, 2017.*

### Letter of Admonition: Excerpts to the LOA dated July 19, 2017
It is alleged that you failed to provide me with requested information from an email sent to you on Wednesday, May 10, 2017. In the IDP meeting you stated, "I sent Lauren a text message that evening stating I could not get the info to her that night I attended the world language 2 hour event." You also stated, "May 4th I sent an email begging for your help, I was dropping the ball, I didn't' get offered support, it didn't get done because I was drowning." You also stated, "She didn't take anything off my plate, she didn't support me."
Further investigation concludes that you did not provide me with the requested information in the email on May 10, 2017. Further investigation also concludes that you did not take support when it was offered to you. You sent an email on May 4, 2017 at 8:18 am ask for support at 5:50 pm on May 4, 2017 I gave you guidance on how to handle those items. In addition, on Saturday, May 13, 2017, Tristan McElhany was at Hug with you setting up computers to ensure they were ready for testing on Monday.

**Rebuttal 2: Alleges my failure to provide her (Mrs. Ford) with requested information**
- Mrs. Ford states, "further investigation concludes that you did not provide me with the requested information in the email on May 10th, 2017."

- - - o My email sent to her on May 11th at 4:10 am was within 22 hours of her request and included all requested information. (see attachment email #1)
    - o Mrs. Ford also directed me to attend a UNR world language event that evening. I texted her that would have it the next morning so she was aware.
    - o I could not finish the requested information during normal school hours because I participated in lengthy remote training an support with assessment leader, Mary Shoemaker, for several hours.
  - Mrs. Ford states, "Further investigation also concludes that you did not take support when it was offered to you."
    - o This statement was not a part of the original allegation and should be expunged.
    - o Mrs. Ford's email in response to my request for help dated May 10th, at 5:50 pm only addressed 4/16 items I had listed and I believe was unsupportive in tone.
    - o At the meeting with Sandra Aird when I was told I was being removed as testing coordinator as results of the error listed in the first bullet point of this letter, Mrs. Aird asked Mrs. Ford, "Who was helping Trina? Who can take over her role as testing coordinator?" Mrs. Ford responded, "Nobody. Tristian isn't' trained, Brad isn't trained, Rhonda is new and isn't' trained. "She looked at me and I offered, "Maybe Sal? He helped Susan last year." Mrs. Ford responded, "No, he's only a PIF, he's classified." Mrs. Aird then said, "I guess I'm going back to assessment to work on tomorrow's testing tickets." These comments further indicate the lack of support I had on camps for testing.

**Decision Point:**
*In reviewing emails dated May 10 from Mrs. Ford and your reply, back on May 15 in response to her questions was not within 22 hours. You sent Mrs. Ford as she directed the staff email that was to go out on May 11, but you did not respond to her questions regarding the computers until May 15. It would seem logical to a reasonable person that because of the importance of EOC testing within a high school that you would provide your administrator with a comprehensive update on the status of testing and plans; this statement goes to your third bullet in your Rebuttal regarding you attending "remote training". The training was for several hours and the lack of pre-planning and clear communication on your part led your administrator to question and ask for specific details on the testing that was to occur the following week. As for your statement in your Rebuttal regarding the statement, "Further investigation also concludes that you did not take support when it was offered to you" should be expunged is denied. You sent an email dated May 4th to Mrs. Ford expressing concerns for your workload and you included that in your documentation to be reviewed by me. If you did not want it reviewed, then you should not have included the documents. However, Mrs. Ford did respond to your concerns. You sent the email on May 4th and even you stated in the email, "with everything I have over the next 7 days, can you help me prioritize my duties? While Mrs. Ford did respond to your help for priorities, you indicated in your email "Many of these items will have to wait until after EOCs or I simply won't get it done, as I know the EOCs are the priority." As for your point regarding you being the sole person understanding the testing coordinators duties, that does not indicate to me a lack of support, it does however indicated to me a gap in the system of having a back-up in the event of an emergency and that should be dealt with through administration.*

**Letter of Admonition: Excerpts to the LOA dated July 19, 2017**

It is alleged that you were dishonest with me about meeting with the department leaders to vet the testing schedule. In the IDP meeting you stated, "I met with Keith Roberts and Natalia Calhan on 1-27 and with all departments leaders and key people on 3/3 they were all there." You also stated, "Keith Roberts emailed me, I met with the English department May 1st and met with math on a day, I did everything I could to make everyone happy. I met with Geoff Philips many of times. I'm never dishonest, complete false statement, communication is my strong suit." In addition, you showed us two calendar invites you sent out, one dated 1/27 and one dated 3/3. After further investigation, nine (9) department leaders and one (1) other staff member indicated attending a meeting where a schedule was shown to them and no input was taken from them. Further investigation concludes that you were dishonest during the IDP meeting and with me about holding a department leader meeting to vet the testing schedule.

### Rebuttal 3: (dishonest about department leader meeting)
- Mrs. Ford states, "further investigation concludes that you were dishonest during the IDP meeting and with me about holding a department leader meeting to vet the testing schedule. "
    - I proved that I met with several department leaders to vet the testing schedule on March 3rd (see photo attachment of calendar invite with verbiage and invitees #1) in what I considered to be as department leader meeting.
    - This allegation in not dishonesty, and there is not misconduct. Mrs. Ford asked if I met with the department leaders in a simple verbal conversation. My answer of "yes" was a true and honest statement given that I believed my March 3rd meeting was considered a department leader meeting and the purpose was to vet the schedule. It is true that not every department was present, but most of them were. Represented at the meeting by an elected department leader were : English, Math, Special Education, Science and the CTE department as well as several other key staff members involved in testing. This is a frivolous allegation from months ago and no intentional dishonesty occurred.
    - I also sent a whole-staff email to vet the testing schedule in March requesting for feedback from all teachers, department leaders, and staff in mid-March.
- Mrs. Ford also alleged, "no input was taken from them"
    - This allegation in not part of the allegation and should be expunged.
    - There are district-wide, severe scheduling impacts in the administration of EOC tests, as other district testing administrators can confirm. During my frequent meetings and conversation with department leaders, many people had different ideas of what the schedule should look like. Some did not understand their request were logistically impossible, with high priority concerns (like special education needs), or that we had double tests we did in the previous year. Keith Roberts (English DL and Natalia Callahan (math DL) can attest to the many times we met to vet the testing schedule and provide the schedule that caused the least possible disruption.

### *Decision Point:*
1. *To this allegation, I agree that the word dishonesty should be removed. In reviewing statements from staff, it is clear you did speak to or meet with <u>some</u> staff members in regards to the scheduling of the EOCs at one time or another through the year and closer to the testing period. The original allegation in*

*the notice of IDP dated June 26, 2017 indicated, "Allegedly you were dishonest with me about meeting with the department leaders to **vet** the testing schedule." The term "vet" means to check, examine, scrutinize, inspect, look over, evaluate, appraise. Therefore, the statement stands in the LOA, "no input was taken from them" because it is the same as "vet". In reviewing the statements of staff, while it is clear that you met with some of them, it is equally clear that the majority of staff who you did meet with felt as though you did not take their input regarding the scheduling of testing. Certain staff indicated that they preferred block scheduling and you were not in favor of this scheduling; listing reasons for such. The staff presented you with their concerns as well and it is not clear as to what if any input you did take from staff.*

**Letter of Admonition: Excerpts to the LOA dated July 19, 2017**
It is alleged that on Thursday, May 11 2017 at 2:00 pm, you sent an email to only staff involved in proctoring the EOC exams explaining that you did not have to show the Test administrator test security NDE spring 2017 video to them in your meeting that they could watch it on their own. It is alleged that you did not verify with staff if they watched the video prior to proctoring the EOC exams on Monday, May 15, 2017. In the IDP meeting you stated, "That is true I did not verity if they did watch the video. I did the admin training on May 11th informed them about the video, I watched it, I talked about it and used the video to create the EOC training. Nothing says the video is mandatory to watch. I am pretty positive that everything in the video was included in my training. I have the four (4) page document if that is untrue, mistake on my part." At this point in the meeting Sandy Aird showed you an email sent on April 6th and again on April 7th. She showed you that you were sent the email and it states that all proctors must observe the video and sign the verification that they saw video. Sandy Aird also stated that on May 17th the proctors had not viewed the video and that we had them watch the video and sign the form that day before they proctored. You then stated, "I made a mistake to send by email and go over at the meeting. Lauren was there and heard me say that I didn't' have to show it here it was in their box". After further investigation it is evident that you did not show the Test administrator test security NDE spring 2017 video and you did not verify that staff watched the video. (see entire allegation on LOA)
**Rebuttal 4: Alleges I did not verify that staff watched the NDE video**
- Mrs. Ford stated, "you did not show the test administrator testing security NDE spring 2017 video and you did not verify that staff watched the video"
  - I am accountable for this error
  - Mrs. Ford was present at the training and heard me make the statement to access and watch the video in their email. This procedure was not disputed by my supervisor at the training. It was stated on the NDE website the video could be sent via email for viewing. I also provided I had detailed accounting of the video contents at the IDP meeting with a 4 page training handout that was distributed at the proctor training. My error was in not confirming they had watched the video and instead only confirming that they attended the training.

***Decision Point:***
*You did not dispute this allegation and in reviewing correspondence from the Assessment Department, it is clear what the mandates were and what the testing coordinator's responsibilities were in regards to showing the video and having staff acknowledge and verify they watched the video. Again, you were the testing coordinator and as such are responsible for reading and carrying out directives from the Assessment Department.*

**Letter of Admonition: Excerpts to the LOA dated July 19, 2017**
It is alleged that on Tuesday May 16, 2017 after being notified by Sandra Aird that you were removed from testing, you stated upon leaving the office, "What's the big deal it was just an email. " In the IDP meeting you stated, "I don't believe I said that, the look on my face numb I was in a state of shock, I want to apologize to Sandy for the look on face. I didn't say it. " Virginia Doran then asked you, "Which was it, you didn't say it or you don't believe you did?" You then stated, "If these two say I did I don't believe I would just say it, maybe it was misinterpreted." Further investigation could not determine if you made this statement or not.

**Rebuttal 5: Alleges misconduct over a statement after being removed as testing coordinator**
- At the IDP, I stated I did not make this statement and Mrs. Ford's finding confirm that this allegation was untrue. This false allegation is egregious and has the appearance that I was indifferent or aloof to the seriousness of the problem, which I certainly was not.

*Decision Point:*
*This should be removed from the LOA as there is no corroborating evidence or witness to you saying this statement.*

**Letter of Admonition: Excerpts to the LOA dated July 19, 2017**
It is alleged that on the evening of Tuesday, May 16, 2017 you sent a text to Rhonda Clark and Brad Bodine stating, "I have been paper-thin for a while, at least I'll get some rest tonight. I really feel bad they won't let me finish it." In the IDP meeting you stated, "That was before I was told I couldn't talk to them. Yes, I sent that, I was paper thin no one was helping me. I regret saying that." You also stated, "I was exhausted I had the slightest sense of relief that you (Sandy Aird) came and told me. I know it was going to happen. I wish I could help them, it was very hard to ask for help from someone who wouldn't help me." You also stated, "I don't see how it is misconduct to apologize to them. " After further investigation it is determined that, you did send a text to Rhonda and Brad with the above statement. It is also evident by your statements, that you were relieved to be removed from testing. This further demonstrates your willful neglect or failure to observe and carry out the requirements of this title.

**Rebuttal 6: Alleges misconduct over a text to the assistant principals who were taking over my role as testing coordinator.**
- Mrs. Ford states, "It is also evident by your statements that you were relieved to be removed from testing This further demonstrates your willful neglect or failure to observe and carry out the requirements of this title."
    - Although I regret the wording of the text, it is certainly not misconduct. Mrs. Ford makes assumption about how I was feeling and uses this single, brief text as proof of "willful neglect and failure to carry out the requirements of this title." It's an abhorrent allegation that makes assumptions about "being relieved". In reality, I was devastated, in shock, and completely exhausted both physically and mentally and I chose my wording poorly when I texted by co-workers.

*Decision Point:*

*In the review of the email sent to you from Mrs. Ford informing you that you were no longer the testing coordinator per the NDE, on May 16, 2017 at 7:54 pm as well as reviewing the text messages you sent to Rhonda and Brad at 5:37 pm, it would appear that you had not been given direction not to discuss the issue with any WCSD until after the text was sent. This allegation should be removed. I do want to acknowledge however, the statement "at least I'll get some rest tonight. I feel really bad they won't let me finish. This sucks" does put into question if you were in fact willful in your neglect of duties. I am pretty confident that your colleagues who had to take up the responsibilities from you, did not feel as though they were going to "get some rest" and were concerned for the students and the impact this error was going to have on them: Text from Rhonda "Trina this is a big deal. You act as if you are the only one that works hard. How can you rest when kids may have to retest? Maybe its text, buy you sound relieved." Your reply to that text, "Seriously Rhonda."*

**Letter of Admonition: Excerpts to the LOA dated July 19, 2017**
It is alleged that after reading and sending a confirmation email on Wednesday, May 17, 2017 about being removed as testing coordinator and told you cannot use your office you entered the building and went right into your office to get your radio. In the IDP meeting you stated, "I was supposed to go on duty there was chaos everywhere, my police radio was on my desk. I told Sandra I am not supposed to be in here I don't think I entered for long it was on the corner of my desk." Further investigation revealed that you entered your office to retrieve your radio after being directed by email that you could not use your office.

**Rebuttal 7: Alleges I went right into my office to get my radio after being told I could not use my office**
- At the IDP, I proved that Sandra Feyeringer was in my office when I arrived and my radio was on the corner of my desk, which is accessible from the hallway. I stated that I do not believe I stepped into the office. I believe I leaned, as my radio was sitting on the corner of the desk, which is accessible without entering the office. I would not have even done that if Sandra was not there to witness me taking the radio only.
- This is a frivolous accusation and does not warrant misconduct. At that time, I believed I was still trusted and supported by my principal and I was expected to do my morning duty as usual. Furthermore, Sandra Feysinger is a witness that I did not enter the office, but rather, I leaned in the doorway and grabbed the radio as I passed by.

*Decision Point:*
*This allegation stands. The very fact that you were directed in an email by Mrs. Ford on May 16 at 7:54 pm, "You cannot use your office" does not excuse you just "leaning in the doorway" to grab your radio. If you needed the radio for your duty, you should have asked another individual to go into your office and get the radio. Even in the IDP meeting you stated, "I told Sandra I am not supposed to be in here I don't think I entered for long it was on the corner of my desk." This is in subordination and you should not have placed yourself in this situation given the directive on May 16th.*

**Letter of Admonition: Excerpts to the LOA dated July 19, 2017**
It is alleged that you are unaware of the seriousness around your testing removal by sending a text to me on Wednesday, May 17, 2017 asking for space to work stating, "Also, I don't have a space to work. The therapist is in Tristian's office. She had a student come on so I left to get coffee until this is figured out. Can you help me get testing items out of my office so I can work in my own office? Should I go home and work?

**Rebuttal 8: Alleges I was unaware of "seriousness around testing removal" because of a text (Excerpts only)**
- Mrs. Ford's findings over a single text make an unproven, egregious assumption that I was "unaware of the seriousness around your testing removal"
- Mrs. Ford assumes false intentions by my text to her asking where I should work. I was devastated and emotionally unstable, but I was attempting to be helpful by finding a space where I could forward critical testing emails to the new coordinators, which can be verified in the email I was able to send on the morning I was removed.
- Mrs. Ford states, "Further investigation revealed that you still feel that you were entitled to have access to your office
    - This was not a part of the original allegation and should be expunged
    - It is irresponsible of my supervisor to assume that asking a question where I can work indicated I feel "entitled". I was desperate to help in whatever to help in whatever way I could and I was panicking. I was confused and unsure of what do so I asked in order to find a way to be of service to the problem.

***Decision Point:***
*This allegation stands in the point of fact that there did not seem to be any accepting of responsibility on your part in regards to the potential impact of what this testing violation meant to students. Through all of the documentation that I was provided by you and the district, there is not an acceptance from you on the gravity of the situation and what it meant to the administration, staff and most importantly the students. The administration may in fact not have been in the position to say "you can get through this" or "a scrap" in that they were dealing with the very real implications of a serious testing violation. It would not seem extraordinary to a reasonable person for you to take the initiative and find another location to complete your work while not placing additional conditions on the administration during this serious situation.*

In conclusion, I find the Performance Expectations to be in line with the needed areas of improvement for you as an administrator. I do not recommend any changes as such.

Sincerely,

*[signature]*

Kristen McNeill, Ed. D
Deputy Superintendent
Cc Dawn Huckaby, Chief Human Resources Officer
Roger Gonzalez, Area Superintendent
Christina Oronoz, Principal, Hug HS
Virginia Doran, Labor Relations Manager