LUKE A. BUSBY, ESQ
Nevada Bar No. 10319
316 California Ave.
Reno, Nevada 89509
775-453-0112
luke@lukeandrewbusbyltd.com

*Attorney for the Plaintiff*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

TRINA OLSEN,

      Plaintiff,

vs.

WASHOE COUNTY SCHOOL
DISTRICT, a political subdivision of the
State of Nevada; Washoe County School
District Superintendent TRACI DAVIS;
and DOES 1 through 10, inclusive,

      Defendants.
_____/

Case No.: 3:19-cv-00665-MMD-WGC

**REPLY TO RESPONSE TO MOTION
FOR PARTIAL SUMMARY
JUDGMENT ON LIABILITY**

**ORAL ARGUMENT REQUESTED**

    COMES NOW, TRINA OLSEN, ("Olsen" or "Plaintiff"), by and through the

undersigned counsel, and files the following Reply to the Response to Motion for

Partial Summary Judgment on Liability filed by Defendant WASHOE COUNTY

SCHOOL DISTRICT, a political subdivision of the State of Nevada ("WCSD") on

June 19, 2020 and the Joinder thereto filed by Defendant TRACI DAVIS ("Davis").

**MEMORANDUM OF POINTS AND AUTHORITIES**

    At the outset, it's important to note that WCSD never actually comes to grips

with the fundamental facts in this case: Olsen had a protected property interest in

her job at WCSD; NRS 391.824(1) and the Due Process Clause of the 14th

Amendment provided Olsen with a right to a predeprivation hearing when she

1

elected to arbitrate the Recommendation to Dismiss her from WCSD; Olsen did in fact elect to arbitrate the recommendation, and by doing so she requested a hearing and an opportunity to be heard on the issues; Davis was aware of Olsen's election to arbitrate the recommendation; yet, Davis fired Olsen before arbitration occurred, i.e. before Olsen was provided with a hearing and an opportunity to be heard.

Even after Arbitrator Andrea Dooley emphatically found in Olsen's favor, i.e. that Olsen was retaliated against by WCSD for reporting the marijuana allegations, that her termination was arbitrary and capricious, and that WCSD violated applicable law, WCSD *still* refused to follow the law as provided in NRS 391.824(6). WCSD was required to either proceed with firing Olsen (and risk the obvious peril in light of the Arbitrator's Decision and Award) or "provide to the employee, by registered or certified mail, written notice that dismissal of the employee will not be recommended to the board and that no further action will be taken against the employee."  Although she was hired back and given backpay, Olsen did not receive the letter required by NRS 391.824(6)(b) described above until February 3, 2020, after this lawsuit was commenced and a hearing on Olsen's Motion for Preliminary Injunction was days away.  NRS 391.824(6) states that the superintendent must issue the required letter in 5 days.  And, as further described below, Olsen has yet to receive a letter that strictly complies with NRS 391.824(6)(b) because the episode at issue still haunting her employment with WCSD, despite her being vindicated in the arbitrators Decision and Award.

### I.    WCSD cites an outdated standard in objecting to the admissibility of the evidence in Olsen's Motion

WCSD argues that Olsen failed to properly authenticate the evidence provided in Olsen's Motion, and makes a blanket objection to Plaintiff's Exhibits 2-40.  *See* WCSD Response at 3.  WCSD argues that a summary judgment motion requires the same caliber of evidence that would be admitted at trial and that the court only considers properly authenticated, admissible evidence in deciding a motion for summary judgment, citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 251 (1986) and *Orr v. Bank of Am*., 285 F.3d 764, 783 (9th Cir. 2002).  This is, however, an outdated standard. FRCP 56(c)(2) was updated as part of the 2010 amendments to FRCP 56.  FRCP 56(c)(2) states that a party may "object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."  This issue was recently succinctly explained in a ruling in this District by Judge Dorsey:

> Both parties make much of the authentication and admissibility of exhibits. The parties seem to rely on— without citing to—the standard set forth in *Orr v. Bank of America*, which requires evidence to be authenticated and admissible in its present form for it to be considered at the summary-judgment stage. However, the 2010 amendments to Federal Rule of Civil Procedure 56 "eliminate[d] th[is] unequivocal requirement" and mandate only that the substance of the proffered evidence would be admissible at trial.

*Dinkins v. Schinzel*, 362 F. Supp. 3d 916, 922-23 (D. Nev. 2019).[1]

---

[1] quoting *Romero v. Nev. Dep't of Corr*., 673 F. App'x 641, 644 (9th Cir. 2016). Citing Fed. R. Civ. P. 56 advisory comm. note to 2010 amendment; *Lee v. Offshore Logistical & Transp*., LLC, 859 F.3d 353, 355 (5th Cir. 2017); *Fraternal Order of Police, Lodge I v. City of Camden*, 842 F.3d 231, 238 (3d Cir. 2016); *Humphreys &*

Likewise, for each exhibit attached to Olsen's Motion, its substance would be admissible at trial.  Exhibits 2-30, 32, and 34-39 to the Plaintiff's Motion consists entirely of statements of the Plaintiff or her former counsel, or of WCSD or its employees, offered as evidence against WCSD, in the form of emails, letters, and text messages, and that could plainly be admitted at trial as party admissions under FRE 801(2).  Exhibit 31 to Olsen's Motion is the transcript of the Deposition of Traci Davis, accompanied by a "Certificate of Recorder" at pages 78-79.  Exhibit 33 to Olsen's Motion is the Decision and Award of the Arbitrator Andrea Dooley, which is clearly admissible under FRE 1005 as a copy of a public record.  Exhibit 40 to the Motion is the Negotiated Agreement between WCSD and the Washoe Principals Association for 2017-2019 and is in a form admissible at trial as an official record under FRE 1005.

In fact the majority of the exhibits in Olsen's Motion were produced by WCSD during the course of this litigation, including Exhibits 2, 4, 5, 7, 10, 11, 12, 13, 14, 16, 17, 20, 23, 24, 34, 36, 38, and 39, as indicated by the "WCSD" bates stamp on each of these exhibits.   Exhibits 9, 15, 18, 19, 25, 26, 27, 29, 30, 32, 35, and 37 were all authenticated by Defendant Davis at her deposition attached to the Motion as Exhibit 31, as indicated by the blue exhibit sticker attached to each of the exhibits with the corresponding number used at Davis' deposition and the Exhibit List on Page 3 of Davis' Deposition in Exhibit 31.   WCSD never actually substantively disputes whether the evidence offered by Olsen in the underlying Motion is actually

_Partners Architects, L.P. v. Lessard Design, Inc_., 790 F.3d 532, 538 *4th Cir. 2015); and _Jones v. UPS Ground Freight_, 683 F.3d 1283, 1293-94 (11th Cir. 2012).

authentic, as each exhibit contains the information sufficient to support a finding that the items are what Olsen claims they are, such as the identity or signature of the author, or WCSD or the author's letterhead.  Per the requirements FRE 901(a) and (b)(4), the distinct characteristics of the writings in the Exhibits attached to the Motion, taken with the circumstances of this case, shows that they are authentic.

WCSD also states that, "most of the facts alleged by Plaintiff are immaterial to the issues of whether Ms. Olsen received due process or was wrongfully terminated," (See WCSD Response at 3:15) but then fails to distinguish between what facts are material and immaterial, or even point to a single fact alleged by Olsen in her Motion that is immaterial. Such conclusory statements, absent actual examples, do not rise to meet the burden placed on a party to show a genuine disputed issue of material fact as required by FRCP 56(a).  According to Rule 56(c) and 56(e)(2) and (3), if a party fails to properly support an assertion or show that a fact is in dispute the Court may grant summary judgment against that party.

**II.    The findings of fact in the Arbitrator's Decision and Award are binding on WCSD and Davis**

WCSD argues that Olsen' attempted use of collateral estoppel fails as a matter of law because there is no binding effect to the arbitration conducted under NRS 391.824, citing Restatement (Second) of Judgments § 84(1) (1982).  See WCSD Response at 12:23. Even if this is the case, arbitration awards may be given "significant weight," be deemed persuasive and collaterally estop relitigating the case. NRS 391.824(4) states that the decision of the arbitrator is not binding on the superintendent, but NRS 391.824(6) requires that after the superintendent receives

the recommendation of the arbitrator, she was required to act within 5 days to either

proceed with a recommendation to dismiss Olsen or, "provide to the employee, by

registered or certified mail, written notice that dismissal of the employee will not be

recommended to the board and that no further action will be taken against the

employee." The evidence conclusively shows that Davis and WCSD failed to comply

with this law.

While WCSD claims that the *City of Reno v. Reno Police Protective Ass'n*,

118 Nev. 889, 896, 59 P.3d 1212, 1217 (2002) stands for the proposition that

preclusive effects do not apply in cases where arbitration is nonbinding (See WCSD

Response at 12:21), the Nevada Supreme Court never made that express ruling.

Rather, the Nevada Supreme Court held that when a collective bargaining

agreement is at issue, the arbitrator's award must be based on the collective

bargaining agreement, and the deference bestowed upon arbitration findings is not

limitless. *Id.* at 894.  This is just common sense, i.e. an arbitrator cannot make

binding findings on issues that are not before the arbitrator, but when an arbitrator

does decide an issue of fact properly before the arbitrator, a party may not relitigate

that determined issue of fact in later proceedings.  The Nevada Supreme Court's

unequivocal finding was that collateral estoppel applies to arbitration – no distinction

as to whether the arbitration was binding or not is made.  *Id.*  In this case the

Arbitrator made clear and distinct findings of fact that have a direct bearing on this

case, i.e. that Olsen's firing was retaliatory, arbitrary and capricious, and that WCSD

fired Olsen in violation of the requirements of NRS 391.822 and 391.824.  *See*

Exhibit 33 to the Motion.  Even after the Arbitrator's decision, WCSD continued to

ignore the Due Process protections built into NRS Chapter 391 by failing to comply with the express requirements of NRS 391.824(6).

**III.     WCSD denied Olsen of her employment and pay for 6 months in clear violation of the law, and failed to comply with its obligations under NRS 391.824 until this lawsuit forced its hand – this was a not a "relatively insubstantial" deprivation**

WCSD argues that there was no Due Process violation because Olsen was reinstated and was provided with back pay. See WCSD Response at 13:24. WCSD cites *Gilbert v. Homar*, 520 U.S. 924, 927, 117 S. Ct. 1807, 1810 (1997) in support of the proposition that Olsen's lost income was "relatively insubstantial."  In *Gilbert v. Homar*, a public employee was charged with a felony and then suspended without pay.  *Id.*  The Court determined that there is no Due Process violation, "So long as a suspended employee receives a sufficiently prompt post-suspension hearing the lost income is relatively insubstantial, and fringe benefits such as health and life insurance are often not affected at all."  *Id.* at 932.  As indicated in the Decision and Award in Exhibit 33, the arbitration hearing in this case did not occur until November 1st, 2nd and 28th of 2018, five months after Olsen was fired on June 5, 2018. See Exhibit 30 to the Motion. Despite the fact that the Decision and Award was issued on December 13, 2018, WCSD did not act to rehire Olsen and provide her with backpay until January 9, 2019, after trying to pressure Olsen to sign a settlement agreement that contained a confidentiality provision and non-disparagement clause. *See* Exhibit 1 to the Motion.

In *Gilbert v. Homar,* the Court explained that it is the length of and the finality of the deprivation that should be examined when conducting a Due Process inquiry,

citing *Fed. Deposit Ins. Corp. v. Mallen*, 486 U.S. 230, 245, 108 S. Ct. 1780, 1790

(1988) and *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 544, 105 S. Ct.

1487, 1494 (1985).  Here, Olsen was terminated retroactively, which was effective

from July 5, 2018 (*See* Exhibit 30 to MSJ) until Olsen was rehired on January 9,

2019 (See Exhibit 35 to MSJ).   NRS 391.824(1) contains a clear prohibition against

firing Olsen when she had requested arbitration, i.e. a hearing and an opportunity to

be heard.  Thus, Olsen was unlawfully deprived of her livelihood by WCSD ad Davis

for over 6 months, in addition to having to pay attorney's fees and the costs

associated with pursuing her arbitration claim against WCSD.  Even after she

prevailed at arbitration, WCSD continued to fail to comply with the requirements of

NRS 391.824(6), and did not do so until faced with a hearing on the  Plaintiff's

Motion for Preliminary Injunction in this case by providing the letter in Exhibit 39 to

Olsen's Motion, signed by now superintendent Kristen McNeill, stating that WCSD

does not intend to take any further adverse action against Olsen based upon the

facts and circumstances addressed in the Decision and Award.  Arguably, this letter

from McNeill still fails to strictly comply with the provision of NRS 391.824(6)(b),

because the statute states that unequivocally in pertinent part that, "…no further

action will be taken against the employee."  After the arbitration, WCSD did take

further action against Olsen, in the form of the revised Letter of Admonition in

Exhibit 38, authored by Ford, the consequences of which are described by Olsen in

her Declaration in Exhibit 1.

///

**IV.     Olsen was denied the process she was entitled to under the law, such a deprivation is not *de minimus***

WCSD argues that even if the Court agrees that Olsen was deprived of a property right, it should decide in WCSD's favor because the harm to Olsen was *de minimus*.   *See* WCSD Response at 15:2.   WCSD cites *Head v. Chicago School Reform Bd. Of Trustees*, 225 F.3d 794, 803 (7th Cir. 2000), in support of the claim that if backpay is provided, that a *de minimus* deprivation occurred.  In *Head,* the 7th Circuit found that a school principal that was provided adequate process, and as such, the Court did not reach the question as to whether the deprivation in that case was *de minimus.*   The word, "backpay" does not appear in the Head decision and WCSD's reading of that case does not follow from the facts contained therein – i.e. its clear that in *Head* the fired principal continued to get paid until the dispute was resolved, unlike Olsen who was terminated for 6 months without pay despite a clear prohibition in the law stating that she could not be fired or have any further action taken against her until after arbitration occurred, i.e. NRS 391.824(1).

WCSD also cites *Qualls v. Cook*, 245 Fed.Appx. 624, 625 (9th Cir. 2007) attempting to compare Olsen's case to *Qualls* in that was *Qualls* was suspended without pay, but WCSD fails to mention that, "Qualls was later placed on suspension without pay. However, he continued to receive his salary because he posted a bond pursuant to Section 391.314(4) of the Nevada Revised Statutes."  *Id.*  There was no indication in *Qualls* that the school board in that case fired Qualls prior to a predeprivation hearing required by law, as occurred in Olsen's case.  See NRS 391.824(1).

Further, Olsen suffered more than the injury to her reputation and status within WCSD than was described in her Declaration in Exhibit 1 to the Motion. Olsen suffered additional pecuniary losses in her dispute with WCSD beyond the loss of her pay for 6 months, including being required to pay her former counsel $27,870 to represent her in the dispute. *See* ECF Doc. 42-2, Plaintiff's Interrogatory Response to Interrogatory No 8.  This is roughly half of the amount Olsen recovered in back pay before taxes, and as such, any intimation that Olsen came out ahead or, "received a windfall," in this situation financially because she received unemployment insurance, as WCSD alleges, is simply false.  Further, as indicted in Olsen's response to Request for Admission 12 from WCSD (See ECF Doc. #42-1 at 5 of 6), Olsen was unaware that she was required to pay her unemployment benefits back, is pursuing paying them back, and has been unable to reach the unemployment office due to the COVID-19 crisis.[2]

**V.     WCSD failed to comply with minimum Federal Due Process protections when it fired Olsen without a predeprivation hearing and the opportunity to be heard**

WCSD also argues that because it provided Olsen with some form of due process, that "many states have statutes regarding the procedures for dismissing public employees, those statutes do not set the parameters of what constitutes due process," citing  *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 105 S. Ct. 1487

---

[2] NRS 612.371(1) states in pertinent part: "Before an employer pays the employee, the employer shall ascertain the amount of the benefits received by the person during the period for which back pay was awarded and shall withhold that amount from the payment of back pay. The employer shall deliver the amount withheld to the Division." Clearly, WCSD did not do this when it paid Olsen her back pay.

(1985) See WCSD Response at 17:25.  WCSD's interpretation of the Due Process

Clause in this context is incomplete.

　　　　To satisfy the requirements of due process under Federal Law, employees

with a protected property interest in their employment need to receive notice and

an opportunity for a hearing ***before*** being deprived of that property interest.  *Id.*

Here, Olsen received the Notice of Recommendation for Dismissal form Gonzalez in

Exhibit 25 on June 28, 2018.  In response, Olsen's then counsel sent the July 6,

2018 Notice to Arbitrate in Exhibit 26 and the Grievance Protesting the

Recommendation to Discharge in Exhibit 27, in which Olsen's former counsel very

clearly requests a hearing to address the allegations in the Recommendation for

Dismissal.  On July 23, 2018, Olsen received the email in Exhibit 28 informing her

that her pay had been suspended, and then on July 27, 2018 she received the letter

from Davis in Exhibit 30 informing Olsen that she has been fired.  All of this

occurred before Olsen was provided with an opportunity to respond to the

allegations in the Recommendation for Dismissal from Gonzales in Exhibit 25.

There is no dispute as to the fact that after Gonzalez issued the Recommendation

for Dismissal of Olsen in Exhibit 25, that Olsen was fired before a hearing was held

at which she had the opportunity to be heard.

　　　　WCSD argues that Olsen was provided with multiple hearings (See WCSD

Response at 7-8, but these hearings resulted in the Letters of Admonition, dated

July 19, 2017 in Exhibits 16 and 17 to the Motion.  Olsen's "hearing" before Current

Superintendent McNeill was simply an appeal of the decisions of the Letters of

Admonition, which McNeill upheld on November 14, 2017, according to Exhibits 21

11

and 22 to the Motion.  The Letters of Admonition in Exhibits 16 and 17 do not state or recommend that Olsen was to be terminated, but rather contain "performance expectations."  Olsen received an "Investigatory Due Process" letter from Gonzalez on July 19, 2017 (See Exhibit 18), and a hearing was held on July 26, 2017.

As indicated in Exhibit 19 to the Motion, Olsen was then put on leave with pay on July 28, 2017.  The "Investigatory Due Process" letter from Gonzalez in Exhibit 18 contains only 3 allegations.  The Recommendation for Dismissal in Exhibit 25 contains allegations far beyond the scope of the notice provided in Exhibit 18, to which Olsen never was provided with a hearing at which she could respond to the new allegations.  Any argument that Olsen was provided with a hearing at which she could have addressed the allegations in the Recommendation for Dismissal, which WCSD attempts to muster, is inconsistent with the indisputable facts.  Olsen was provided with no hearing prior to being fired by Davis subsequent to the issuance of the Recommendation for Dismissal in Exhibit 25.  Courts have been crystal clear that a predeprivation hearing must occur before employees are finally deprived of their property interest. *Mathews v. Eldridge*, 424 U.S. 319, 347, 96 S. Ct. 893, 909 (1976); Brewster *v. Bd. of Educ*., 149 F.3d 971, 984 (9th Cir. 1998).

At the time Olsen was fired, she had been on leave with pay for just under a year, (See Exhibits 19 and 30 to the Motion) there was no government interest or need to fire Olsen her prior to holding a predeprivation hearing after issuance of the Recommendation for Dismissal.  Olsen's protected property interest clearly outweighed any rush to fire her without a fair hearing. *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 84 L. Ed. 2d 494, 105 S. Ct. 1487 (1985).

Nevada has rules in place to protect employees, such as NRS 391.824(1) to ensure that employees receive at least the minimum due process protections guaranteed under Federal Law, but WCSD simply failed to follow these rules, i.e. to provide Olsen with the pre-deprivation hearing in front of a fair and impartial decisionmaker that the State of Nevada decided she was "due" before being terminated.  While Federal due process guarantees did not necessarily entitle Olsen to the exact same procedures provided by state law, what process is due is determined by context, to be analyzed in accordance with the ruling in *Mathews v. Eldridge*, 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976) – Olsen, by any measure of fundamental fairness and due process, was entitled to some sort of fair hearing and an opportunity to respond to the allegations leveled at her by Gonzalez, which not only recommended that Olsen be fired, but impugned her good name, reputation, honor, and integrity. *See* Exhibit 25 to the Motion where Gonzalez accused Olsen of gross misconduct and dishonesty, among other accusations.

**VI.   WCSD does not dispute the facts that form the basis for *Monell* liability against WCSD.**

WCSD argues that it is not liable under *Monell* because it is ordinarily for the jury to decide whether the decisions of the policymakers with the power to make official policy caused a deprivation by policies specifically commanding that the deprivation occur, citing *Jett v. Dallas Indep. Sch. Dist*., 491 U.S. 701, 737, 109 S. Ct. 2702, 2724 (1989).  See WCSD Response at 25:10.  WCSD does not dispute that Davis was the officer with final policymaking authority within WCSD as to decisions as to whether to terminate employees, but rather hangs its hat on the

argument that Olsen, "is unable to demonstrate that Olsen's termination was pursuant to a WCSD policy which was the driving force behind the alleged constitutional violation."  See WCSD Response at 24:7. WCSD does not deny that it was Davis' decision to fire Olsen, as Davis signed the note to Olsen in Exhibit 30 to Olsen's Motion.  It is well established that a choice among alternatives by a municipal official with final decision-making authority may also serve as the sole basis of *Monell* liability.  See *Pembaur v. City of Cincinnati*, 475 U.S. 469, 482–83 (1986); *Brown v. Lynch*, 831 F.3d 1146, 1152 (9th Cir. 2016).  Section 1983 authorizes suit against entities for damages if the enforcement of a policy or practice, or the decision of a final policymaker, caused the violation. *Peralta v. Dillard*, 744 F.3d 1076, 1083 (9th Cir. 2014) (en banc). Ratification of the decisions of other WCSD officials by Davis, an official with final decision-making authority, can also be a policy for purposes of municipal liability under § 1983. *Trevino v. Gates*, 99 F.3d 911, 920–21 (9th Cir. 1996) and *Gillette v. Delmore*, 979 F.2d 1342, 1346–47 (9th Cir. 1992).

The right to a jury does not preclude the Court from granting summary judgment where there are no genuine issues of material fact for trial.  *Lindsey v. Leavy*, 149 F.2d 899 (9th Cir. 1945), cert. denied, 326 U.S. 783, 66 S. Ct. 331, 90 L. Ed. 474 (1946).  Summary judgment is appropriate if the court determines that there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. *Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1074 (9th Cir. 2013).  There is no trial if there are no triable facts, and there are not any in this case.

**VII.    Olsen was denied due process under the Nevada Constitution because she was entitled to have her case heard by a third-party neutral before being terminated by Davis**

WCSD argues that no actionable deprivation occurred under the Nevada Constitution because Olsen was fully reinstated with back pay and benefits and that, if a deprivation did occur, Olsen received notice and an opportunity to be heard, on multiple occasions, before her termination, as well as after her termination. See WCSD Response at 27:8.

Here, WCSD reiterates its argument that it provided Olsen with some process before she was terminated, and that it provided her with her job back after she prevailed at arbitration.  This is akin to arguing that as long as some process is provided to an employee at WCSD, that WCSD can completely ignore the applicable Nevada law as to what process is specifically required by Nevada law.  It may fire employees with a protected property interest before they receive the process that is due to them under the law, even if that process, i.e. NRS 391.824, requires that they have an opportunity to be heard by a third party neutral before being terminated.  This is a truly bold and extraordinary position for a government body to take before a Court and is simply contrary to law.  NRS 391.824(1) should have prevented Olsen from ever being fired in the first place, and that Nevada law very clearly requires that WCSD must follow procedures required by statute in nonrenewal of even a probationary teacher's contract. *McCracken v. Elko County Sch. Dist*., 103 Nev. 655, 747 P.2d 1373 (1987).  NRS 391.824 protects employees' rights by guaranteeing that their case may be reviewed by an outside neutral according to established rules and procedures. It also protects the public from poor

or biased decision making from public officials who may work in an echo chamber where their views are irrevocably tainted by their prejudices and preexisting relationships with the parties. As soon as Olsen was finally able to present her case to a neutral third party, she resoundingly prevailed.  *See* Exhibit 33 to the Motion.

Because Olsen had a constitutionally protected property interest in her job, a fact that WCSD does not dispute, she was entitled to due process before being deprived of that interest under Nevada law.  *Pressler v. City of Reno*, 118 Nev. 506, 511, 50 P.3d 1096, 1098 (2002).  When a school district simply disregards its own governing statutes that provide for due process in order to put pressure on an employee with whom it is having a dispute, as happened with Olsen (See Exhibit 1 to the Motion) it violates the due process guarantees in the Nevada Constitution.

Nevada's Constitution protects against acts by public officials that are fundamentally unfair and shocking to the universal sense of justice.  *Summers v. Warden of Nev. State Prison*, 84 Nev. 326, 329, 440 P.2d 388, 390 (1968).  This Court has broad discretion under Nevada's Constitution to correct acts by pubic officials that are fundamentally unfair, and Olsen's description of the shocking nature of what happened to her at WCSD in response to WCSD's interrogatories is apt:

> I told Jessica Wilson to report to Lauren Ford shortly after my conversation with Wilson. I then submitted a report at the direction of the area superintendent after hearing from Jessica Wilson that Lauren Ford had given drugs back to a student. Within 2 weeks of that report, I was accused of 15 unrelated acts of misconduct by Lauren Ford after 22 years of service to WCSD where I was never disciplined for any misconduct. During the investigation by WCSD, I was directed by the district not to talk to witnesses. Within 5 weeks of reporting the marijuana incident, Ford was promoted to Area Superintendent and the

16

dean [Wilson] involved was promoted to administration. Over the next 18 months in this dispute, the truth, policies, and the law failed to protect me from retaliation termination from WCSD. WCSD stopped my pay without warning and before notice of recommended termination, giving us no warning to plan for the loss of pay and causing extraordinary emotional and financial stress. I was required by district policy to report the marijuana incident and I was fired for doing so. The District then appealed my unemployment four times while delaying arbitration for nearly 6 months. WCSD intentionally exerted financial and emotional pressure on me to try and get me to give up fighting the false allegations leveled against me. I thought I could rely on a public employer to follow the law and protect my paycheck while I proved my innocence.

Even after winning at arbitration, WCSD allowed Ford, the person who made false accusations against me, to rewrite my formal discipline for my permanent file despite the arbitrator finding her allegations were false, "arbitrary and capricious", and "retaliatory." Ford and a group of administrators and teachers disparaged me publicly at a board meeting in March 2019 that made local news. In April 2020, Dean Wilson was promoted to school principal, although it was proven that she gave marijuana to a student and lied on her original statement, contributing to the cover-up that cost me my job. This entire process has been extraordinarily emotionally taxing and humiliating because WCSD has been trying to gaslight me from the beginning when I knew what I did was right. Its shocking and painful to discover that public officials care more about protecting their friends and their image than protecting students and standing up for the truth. It's also shocking that Wilson and Ford were never disciplined, to my knowledge, even though they were apparently not dealing with student drug possession appropriately.

*See* Olsen Response to Interrogatory 9 at ECF Doc. 42-2 at 6 of 12.

**VIII.    Area Superintendent Roger Gonzalez was the appropriate authority to whom to report the allegations that Olsen's boss, Lauren Ford, had returned drugs to a student at Hug High.**

WCSD argues that Roger Gonzalez was not the "appropriate authority" to whom to report the allegations that Olsen's boss, Lauren Ford, had returned drugs to students and that WCSD had "mixed motives" to fire Olsen.  *See* WCSD Response at 28-29.  Once again, there is no genuine factual dispute as to what

occurred here.  WCSD does not deny that before the marijuana incident with Ford, Olsen had a discipline free service record with WCSD for over 20 years.

While WCSD argues that, "it bears mentioning that Plaintiff relies entirely on the Arbitrator's decision to support her claim that her termination was proximately caused by the whistleblowing activity." See WCSD Response at 29:8. However, this is not the case, as the record shows that WCSD employees repeatedly cited Olsen's reporting of the marijuana incident to Gonzalez as a basis for firing her. See Exhibits 9, 15, 16, 17, 18, 25 to Olsen's Motion.

It also bears mentioning that while in its Response, WCSD states that, "the irresponsible reporting of the "marijuana incident" is but one of many issues that Lauren Ford and the WCSD had with Olsen…"  See WCSD Response at 5:15. There was nothing "irresponsible" about the manner in which Olsen reported the marijuana incident and WCSD.  It was done in accordance with the law, there is no genuine issue of fact disputing that Olsen was made a target and was punished for the reporting, as WCSD gallingly continues to allege in its Response.  In the Arbitrator's Decision and Award, the hearing for which Ford testified at, the Arbitrator found that WCSD retaliated against Olsen for reporting the marijuana incident, that WCSD's firing of Olsen was arbitrary and capricious, and was done in violation of Olsen's rights under the law.

While WCSD claims that Roger Gonzalez was not the appropriate authority to whom to report the allegations that Ford had returned drugs to students, WCSD never states specifically to whom the Olsen should have reported the allegations. The matter was one of the enforcement of WCSD disciplinary policies when it came

to how to handle situations where students were caught with drugs at Hug High,

and Gonzalez was the public official with the power to take corrective action or at

least investigate the facts as to what occurred.  There is no genuine dispute of fact

that Gonzalez was not Olsen's "supervisor."  Unfortunately, the record shows that

Mr. Gonzalez did not seem at all interested in determining whether students at Hug

High were caught with drugs that were then returned to them, which the facts in this

case show happened.  Rather, his focus was on destroying Olsen's reputation and

career, and apparently, permitting Hug High administrators to use students as

informants against other students dealing drugs at Hug High, and as a reward,

allowing the informing students to keep drugs they brought to school. *See* Exhibit

25 to the Motion.

**IX.     WCSD's request that a decision on the Motion should be delayed or deferred based on Rule 56(d) lacks adequate justification.**

WCSD's argument that it should be granted additional time is solely

supported by the Affidavit of WCSD's counsel in ECF Doc. #42.  Therein, WCSD's

counsel states that he has been unable to take Olsen's deposition, and that Olsen's

testimony is "essential to determining the issues in Plaintiff's Motion…"  *Id.*

 "To obtain relief under Rule 56(d), the movant must submit an affidavit (1)

identifying the probable facts that are unavailable, (2) stating why these facts cannot

be presented without additional time, (3) identifying past steps to obtain evidence of

these facts, and (4) stating how additional time would allow for rebuttal of the

adversary's argument for summary judgment."  *Cerveny v. Aventis*, Inc., No. 16-

4050, slip. op. at 40 (10th Cir. May 2, 2017).  Rule 56(d) clearly required "specified

19

reasons" as to why the party cannot present facts essential to justify its opposition. *Riverport Ins. Co. v. Oakland Cmty. Hous., Inc*., 668 F. Supp. 2d 1235, 1236 (N.D. Cal. 2009).  No such reasons are provided in the Motion or in WCSD's counsel's affidavit.  "In order to make a proper Rule 56(d) showing, a party must make clear what information is sought and how it would preclude summary judgment." *Yagman v. United States DOJ*, No. CV 13-0354 PA (Ex) (C.D. Cal. Mar. 22, 2014) citing *Margolis v. Ryan*, 140 F.3d 850, 852 (9th Cir. 1998). Not having taken a person's deposition is not a fact in dispute, and WCSD never states what disputed question of fact would be answered by taking Olsen's deposition.

**Conclusion**

WHEREFORE, Olsen requests that the Court grant this motion and enter Partial Summary Judgment against the Defendants on liability in this case and enter a Declaratory Order that the acts, policies, and practices of WCSD and Davis as alleged herein violated Olsen's due process rights under the 14th Amendment to the Constitution and the Nevada Constitution.

**DATED** this Thursday, July 2, 2020:

By:_____

LUKE BUSBY, ESQ.
NEVADA STATE BAR NO. 10319
316 CALIFORNIA AVE.
RENO, NV 89509
775-453-0112
LUKE@LUKEANDREWBUSBYLTD.COM

1

## **CERTIFICATE OF SERVICE**

2

3        Pursuant to FRCP 5, I certify that on the date shown below, I caused service to

4   be completed of a true and correct copy of the foregoing pleading by:

5

_____        personally delivering;

6

7   _____        delivery via Reno/Carson Messenger Service;

8   _____        sending via Federal Express (or other overnight delivery service);

9
_____        depositing for mailing in the U.S. mail, with sufficient postage affixed
           thereto; or,
10

11   __X__        delivery via electronic means (fax, eflex, NEF, etc.) to:

12
           ROBERT A. DOTSON, ESQ.
13           JUSTIN C. VANCE, ESQ,
           5355 Reno Corporate Dr., Ste 100
14           Reno, Nevada 89511
           (775) 501-9400
15           *Attorneys for Washoe County School District*

16
           KATHERINE F. PARKS, ESQ.
17           Thorndal Armstrong Delk Balkenbush & Eisinger
           6590 S. McCarran Blvd., Suite B
18           Reno, NV  89509
           *Attorney for Traci Davis*
19

20

21           **DATED** this Thursday, July 2, 2020

22
                             By:_____
23                             LUKE BUSBY, ESQ.
                             NEVADA STATE BAR NO. 10319
24                             316 CALIFORNIA AVE.
                             RENO, NV 89509
25                             775-453-0112
                             luke@lukeandrewbusbyltd.com
26                             ATTORNEY FOR PLAINTIFF
27

28