UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| TRINA OLSEN, | Case No. 3:19-cv-00665-MMD-WGC |
| Plaintiff, | ORDER |
| v. | |
| WASHOE COUNTY SCHOOL DISTRICT, TRACI DAVIS, | |
| Defendants. | |

**I.    SUMMARY**

Plaintiff Trina Olsen primarily alleges that Defendant Washoe County School District ("WCSD") and its Superintendent at the time, Defendant Traci Davis, violated her procedural due process rights under the United States and Nevada Constitutions when they fired her from her job as an assistant high school principal. (ECF No. 1-1.) Before the Court are the parties' cross-motions for summary judgment (ECF Nos. 37 ("Plaintiff's Motion"), 57 ("Defendants' Motion")),[1] and Plaintiff's motion to seal certain exhibits attached to Plaintiff's Motion (ECF No. 38).[2] As further explained below, the Court will

---

[1] The Court also reviewed the associated briefing and accompanying documents. (ECF Nos. 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 58, 59, 60, 61, 62, 63, 64, 65.) Davis joined WCSD's briefing (ECF Nos. 49, 59, 65), so the Court will refer to Defendants' Motion, and Defendants' argument(s), as appropriate, herein.

[2] Plaintiff's motion to seal is unopposed. The Court finds compelling reasons exist to seal the exhibits Plaintiff seeks to file under seal—and will grant Plaintiff's unopposed motion to seal—because the exhibits contain students' names and other sensitive information about their personal situations. (ECF Nos. 38-1, 38-2, 38-3.) *See also Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178-80 (9th Cir. 2006) (articulating compelling reasons standard for exhibits attached to dispositive motions); *Tesla, Inc. v. Tripp*, Case No. 3:18-cv-00296-MMD-CLB, --- F. Supp. 3d ----, 2020 WL 5570983, at \*15 (D. Nev. Sept. 17, 2020) (granting motion to seal certain exhibits in part because they contained personal information).

grant Defendants' Motion, and deny Plaintiff's Motion, primarily because Plaintiff received the process she was due.

## II. BACKGROUND[3]

Plaintiff has been an employee of WCSD since 1992, primarily working as a physical education teacher and then Dean of Students at Wooster High School. (ECF Nos 1-1 at 4, 37-1 at 2.) For the 2016-2017 school year, Plaintiff was promoted into the position of Assistant Principal at Hug High School, where she directly reported to Principal Lauren Ford. (ECF No. 1-1 at 4.)

This case focuses on events that occurred in May 2017, which eventually led to Plaintiff's termination in July 2018, and her full reinstatement with back pay and benefits in January 2019. (*Id.* at 4-9.) Plaintiff is now an Assistant Principal at Wooster High School. (*Id.* at 3.)

On May 5, 2017,[4] teacher Patrick Rossi told Plaintiff that he had seen Dean of Students Jessica Wilson return marijuana to a student she caught with marijuana. (ECF No. 37-1 at 3.) Plaintiff confronted Wilson about the allegation. (*Id.*) Wilson admitted she had returned marijuana to the student, and had not suspended the student. (*Id.*) Wilson told Plaintiff she did it because she had seen Ford (the Principal) do the same thing. (*Id.*) Wilson later clarified that she meant she had seen Ford refrain from suspending a student when she caught the student with drugs—she had never seen Ford give the student drugs. (ECF No. 47 at 2.) Regardless, Plaintiff instructed Wilson to self-report the incident to Ford, and Wilson did, on May 11, 2017. (ECF Nos. 37-1 at 3, 43 at 3.) The parties generally refer to this as the 'marijuana incident.'

Ford says that Plaintiff should have gone to her directly about this marijuana incident. (ECF No. 43 at 3.) Plaintiff alleges that Ford began retaliating against her beginning on May 11, 2017 by sending critical text messages and scrutinizing Plaintiff's

---
[3]The following facts are undisputed unless otherwise noted.

[4]All that follows occurred at Hug High.

2

plans for school-wide standardized testing, and draws the inference it was because Plaintiff did not go to Ford directly with her concerns about Wilson. (ECF No. 37-1 at 3-4.)

On May 16, 2017, Sandra Aird, WCSD's District Director of Assessment, notified Ford of testing discrepancies at Hug High, and also that Plaintiff had inadvertently sent confidential testing information attached to an all-staff email. (ECF No. 43 at 2.) Plaintiff had first sent the email to Ford first for approval, and Ford approved it. (ECF No. 60-1 at 2-3, 13-16.) However, Plaintiff acknowledged in an email to Ford that she made a big mistake in sending out the email with the confidential information in an attached Microsoft Excel file. (ECF No. 43-1 at 3.) Aird and Ford immediately removed Plaintiff from her position as testing coordinator. (ECF No. 43 at 2-3.) As part of this removal, Ford told Plaintiff she could not go back into her office because there were testing materials in it. (*Id.* at 3.) Plaintiff nonetheless went back into her office to retrieve her radio. (*Id.*)

On May 17, 2017, Area Superintendent Roger Gonzalez gave Plaintiff a letter in which he informed her she was being reassigned to Traner Middle School while WCSD investigated Plaintiff's alleged misconduct. (ECF Nos. 48 at 2, 48-1.) On May 24, 2017, Ford gave Plaintiff a "a Notice of Investigatory/Due Process Meeting and Right to Representation" letter ("IDP Notice"). (ECF No. 43-3.) The IDP Notice is a letter summarizing Ford's allegations against Plaintiff—of disciplinary infractions that Ford decided to investigate. (*Id.*) This particular IDP Notice alleges that Plaintiff broke rules by changing student grades in inappropriate ways, along with alleging that Plaintiff mishandled the marijuana incident, took a phone out of someone's hand to talk to a 911 operator, and failed to attend certain meetings she was supposed to be leading, or supervise the staff who did attend those meetings. (*Id.*) The IDP Notice also informs Plaintiff that the next step in the disciplinary process is a meeting on May 31, 2017 between Ford, Plaintiff, and Labor Relations Manager Virginia Doran. (*Id.* at 1.)

///

On May 25, 2017, Plaintiff sent Area Superintendent Gonzalez an email where she acknowledged she was accountable for the testing incident, but noted she had not heard anything about it, and went on to state she wanted to file a grievance against Ford, and wanted to report the marijuana incident. (ECF No. 48-4 at 2.) She concluded the email by requesting a meeting to report these allegations, stating, "I believe the findings from this investigation will have an impact on my own pending allegations from my principal that resulted in my temporary placement to another school site." (*Id.*) Area Superintendent Gonzalez did not respond to her request for a meeting.

On May 31, 2017, the meeting mentioned in the IDP Notice occurred. (ECF No. 43 at 4.) According to Ford, "[d]uring the meeting we discussed the allegations against [Plaintiff] and I provided her with an opportunity to respond to each and every allegation from the Notice of IDP." (*Id.*) Plaintiff similarly explained at her deposition that Ford and Doran "went through each bullet point and asked questions, and I defended myself and tried to provide evidence." (ECF No. 58-1 at 23.)

On June 1, 2017, Plaintiff sent Area Superintendent Gonzalez another email stating that she wanted to report concerns about Ford, and he directed her to file a formal complaint against Ford. (ECF No. 48-5.) Area Superintendent Gonzalez again refrained from meeting with Plaintiff. (*Id.* at 2.)

Later in June 2017, Plaintiff received another IDP Notice from Ford, this time focused on the testing incident where Plaintiff accidentally sent confidential information to all Hug High staff. (ECF No. 43-4.) Plaintiff attended a meeting regarding this IDP Notice on June 26, 2017 with Ford, Doran, and Aird. (ECF No. 44 at 2-3.) Similar to the first IDP meeting, Plaintiff was able to respond to each of the allegations made against her in the second IDP Notice at this meeting. (ECF Nos. 43 at 4, 58-1 at 34.)

On July 19, 2017, Ford provided Plaintiff with two Letters of Admonition ("LOA(s)"), in which Ford outlined her findings regarding the allegations against Plaintiff in the two IDP Notices. (ECF Nos. 43-5, 43-6.) While Ford basically found the allegations

included in the two IDP Notices substantiated in the two LOAs, the LOAs did not immediately result in Plaintiff's termination. (ECF No. 43 at 4.)

Following a third IDP Notice and corresponding meeting regarding Plaintiff's allegation that Ford gave drugs back to a student, which also discussed WCSD's investigations into Plaintiff's conversations with others about WCSD's investigations of Plaintiff (ECF Nos. 48 at 3-4, 48-6), on July 27, 2017, WCSD placed Plaintiff on administrative leave with pay pending the outcome of WCSD's investigation into her alleged misconduct (ECF No. 48 at 4, 48-7).

In the fall of 2017, Plaintiff appealed the two LOAs to Defendant Davis, and a hearing was set before Deputy Superintendent Kristen McNeill. (ECF No. 46 at 2.) McNeill held a hearing on Plaintiff's appeal of the two LOAs on September 28, 2017. (*Id.*) Along with Plaintiff, McNeill, and Doran, Plaintiff's husband and Plaintiff's counsel at the time, Michael Langton, attended the hearing. (*Id.*; *see also* ECF No. 44 at 3.) Plaintiff was able to submit evidence both during and after the hearing. (ECF No. 46 at 2.) Plaintiff was given 90 minutes to defend herself against 15 allegations. (ECF No. 58-1 at 46.) McNeill issued written decisions following the hearing in the form of two letters mailed in November 2017, where she mostly upheld, but also rejected in part, Ford's findings in the LOAs. (ECF Nos. 46 at 2, 46-1, 46-2.)

Plaintiff then sought mediation with WCSD. (ECF No. 44 at 3.) The mediation occurred on December 6, 2017, but did not result in a settlement. (*Id.*)

On June 28, 2018, Area Superintendent Gonzalez sent Plaintiff a letter stating that he was recommending her termination effective July 5, 2018, for cause based primarily on the findings in the LOAs sustained during the appeal. (ECF Nos. 48 at 4, 48-8.)

On July 6, 2018, Plaintiff's counsel at the time, Langton, requested arbitration. (ECF No. 45-2.)

///

///

Plaintiff was formally terminated by Defendant Davis in a letter dated July 27, 2018, in which Davis stated Plaintiff's termination was effective July 5, 2018, and acknowledged that Plaintiff had requested arbitration. (ECF No. 44-8.)

Plaintiff's requested arbitration occurred over the course of three days in November 2018. (ECF No. 44 at 4.) While the Arbitrator sustained some of WCSD's findings, she overall found that WCSD should not have terminated Plaintiff and recommended WCSD reinstate Plaintiff, and make her whole back to the date of her termination. (ECF No. 58-1 at 52-53; *see also* ECF No. 37-33 (the arbitrator's decision).) In pertinent part, the arbitrator found:

> At the hearing in this matter, the District stated three reasons for the dismissal of Ms. Olsen. As stated above, the evidence provided by the District did not support the conclusion that dismissal is warranted. Olsen did not knowingly file false claims against Principal Lauren Ford, and, if she did discuss her employment action with co-workers, it was not knowingly in violation of a rule, nor did it warrant dismissal. Because of the retaliatory nature of the recommendation of dismissal, the Employer's lack of just cause for discharge is arbitrary and capricious.

(ECF No. 37-33 at 38.) However, the arbitration was nonbinding, so WCSD did not immediately accept the arbitrator's recommendation, and Plaintiff's counsel and WCSD's counsel continued to attempt to negotiate a settlement. (ECF No. 45 at 3.) They were unsuccessful. (*Id.*)

Finally, on January 9, 2019, WCSD accepted the arbitrator's recommendation and reinstated Plaintiff, and gave her back pay and benefits covering the period of her termination. (*Id.*; *see also* ECF Nos. 45-5, 58-1 at 53.) As noted, Plaintiff is currently an Assistant Principal at Wooster High School, another high school within WCSD. (ECF No. 1-1 at 3.)

///

///

## III. LEGAL STANDARD

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *See id.* at 250-51. "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968)). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *See Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986) (citation omitted).

The moving party bears the burden of showing that there are no genuine issues of material fact. *See Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th

7

Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient[.]" *Anderson*, 477 U.S. at 252.

Further, "when parties submit cross-motions for summary judgment, '[e]ach motion must be considered on its own merits.'" *Fair Hous. Council of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (quoting William W. Schwarzer, *et al.*, *The Analysis and Decision of Summary Judgment Motions*, 139 F.R.D. 441, 499 (Feb. 1992)) (citations omitted). "In fulfilling its duty to review each cross-motion separately, the court must review the evidence submitted in support of each cross-motion." *Id.*

## IV. DISCUSSION

As the arguments in the parties' motions entirely overlap, the Court addresses both motions together, and structures its analysis to map to Plaintiff's four claims in this lawsuit. The Court first addresses several threshold issues, then Plaintiff's procedural due process claim under the Fourteenth Amendment to the United States Constitution, Plaintiff's *Monell*[5] claim and due process claim under the Nevada State Constitution (together), and then Plaintiff's claim for tortious discharge in violation of public policy.

### A. Threshold Issues

Both parties present requests and arguments that the Court will briefly address before moving on to their primary arguments on Plaintiff's claims. First, Defendants request more time to depose Plaintiff under Fed. R. Civ. P. 56(d) in responding to Plaintiff's Motion. (ECF No. 41 at 29-30.) However, Defendants subsequently filed their own Motion seeking summary judgment on all of Plaintiff's claims, relying in part on the transcript of Plaintiff's deposition. (ECF No. 57.) Defendants' request under Rule 56(d) is therefore denied as moot.

///

---

[5]*See Monell v. Dep't. of Social Services of City of New York*, 436 U.S. 658 (1978).

Second, Plaintiff makes an unpersuasive collateral estoppel argument in her Motion. (ECF No. 37 at 15-17.) Plaintiff more specifically argues that, at "arbitration, [Plaintiff] already prevailed in showing the facts that support the conclusion that WCSD terminated [Plaintiff] in violation of her Due Process rights under the 14th Amendment, as conferred by NRS Chapter 391." (*Id.* at 15.) But as Defendants argue (ECF No. 41 at 12-13), the arbitration award cannot have preclusive effect here because it was nonbinding. (ECF No. 37-33 at 2 (specifying the arbitration was conducted, in part, under NRS § 391.824).) *See also* NRS § 391.824(4) ("The written report filed by the arbitrator pursuant to subsection 2 is not binding upon the superintendent or the board."); *Dias v. Elique*, 436 F.3d 1125, 1129 (9th Cir. 2006) (stating that, under Nevada law, one requirement of issue preclusion is that the prior decision was "on the merits and is final"); *City of Reno v. Reno Police Protective Ass'n*, 59 P.3d 1212, 1216-17 (Nev. 2002) (concluding that an administrative body was not estopped from deciding "issues previously decided by an arbitrator" in part because the arbitrator's decision was not binding). Moreover, the parties did not litigate the question of whether Defendants violated Plaintiff's procedural due process rights before the arbitrator. (ECF No. 37-33.) *See also Clark v. Bear Stearns & Co.*, 966 F.2d 1318, 1320 (9th Cir. 1992) ("To foreclose relitigation of an issue under collateral estoppel: (1) the issue at stake must be identical to the one alleged in the prior litigation; (2) the issue must have been actually litigated in the prior litigation . . ."). Thus, collateral estoppel does not apply here.

Third, Defendants object to Plaintiff's statement of facts in Plaintiff's Motion, and that some of the exhibits attached to Plaintiff's Motion are not properly authenticated. (ECF No. 41 at 2-3.) However, Defendants recreate much of the same factual background offered by Plaintiff in Defendants' Motion (ECF No. 57 at 2-13), and Plaintiff does not object to either Defendants' presentation of their undisputed facts, or the authentication of the exhibits Defendants rely on (ECF No. 60). Moreover, Plaintiff persuasively responds to Defendants' evidentiary objection that the substance of the evidence presented in her exhibits would be admissible at trial. (ECF No. 50 at 3-5.) *See*

*also Dinkins v. Schinzel*, 362 F. Supp. 3d 916, 923 (D. Nev. 2019) (stating that, following 2010 amendments, Rule 56 requires "only that the *substance* of the proffered evidence would be admissible at trial.") (emphasis in original). Accordingly, the Court will not, as Defendants request, "disregard [nearly] all [of Plaintiff's] exhibits for lack of proper authentication because their substance could be admissible at trial." *Id.*

That brings the Court to the parties' arguments on Plaintiff's claims.

### B. Fourteenth Amendment Due Process

To prevail under 42 U.S.C. § 1983,[6] a plaintiff must prove that he or she was: (1) deprived of a right secured by the Constitution or laws of the United States; and (2) that the alleged deprivation was committed by a person acting under color of state law. *See Marsh v. Cty. of San Diego,* 680 F.3d 1148, 1152 (9th Cir. 2012). "[A] public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." *West v. Atkins,* 487 U.S. 42, 50 (1988). A defendant is liable under 42 U.S.C. § 1983 "only upon a showing of personal participation by the defendant." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Vicarious liability is inapplicable to § 1983 suits. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). But a municipality—or county—may be held liable under § 1983 if it implemented a "policy" or "custom" that caused the plaintiff's injury. *See Kincaid v. Washoe Cty.*, Case No. 3:12-cv-482-MMD, 2013 WL 5200894, at *4 (D. Nev. Sept. 13, 2013) (citations omitted).

Deprivation of procedural due process under the Fourteenth Amendment can constitute a violation of a right secured by the Constitution. To prevail on a Fourteenth Amendment procedural due process claim, Plaintiff must prove: (1) she possesses a protected liberty or property interest; (2) the government deprived her of that interest; and (3) the government denied her adequate procedural protections in the process of depriving her of her property interest. *See Foss v. Nat'l Marine Fisheries Serv*., 161 F.3d

---

[6]Plaintiff relies on this statute to bring her procedural due process and *Monell* claims. (ECF No. 1-1 at 10-13.)

10

584, 588 (9th Cir. 1998); *see also Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 983 (9th Cir. 1998). The Court addresses below the parties' arguments as to each of these three elements.

### 1. Property Interest

Plaintiff argues in her Motion she had a property interest in her job. (ECF No. 37 at 19.) Defendants counter in their Motion that Plaintiff had no property interest in her job as an assistant principal because she was a first-year, probationary administrator under NRS § 391.820(8). (ECF No. 57 at 15.) Plaintiff clarifies in her response to Defendant's Motion that, while she concedes she was a probationary administrator, she had a property interest her continued employment with WCSD as at least a classroom teacher. (ECF No. 60 at 13-15.) The Court agrees with Plaintiff.

Plaintiff was a tenured teacher, but a probationary administrator, when the events leading to her termination occurred. (ECF No. 57 at 2; *see also* ECF No. 63 at 1.) This means that she did not have a property interest in her administrative position as an assistant principal, *see* NRS § 391.820(1), (8), but did have a property interest in her continued employment with WCSD in some capacity, specifically as a classroom teacher. *See* NRS § 391.820(8)(a)-(b) (specifying that a probationary administrator who is also a post-probationary teacher must be offered a job as a classroom teacher if there is a teaching position available within the district and the district chooses not to renew her contract as a probationary administrator). Because Defendants terminated Plaintiff's employment instead of demoting her to again serve as a classroom teacher (ECF No. 57 at 2, 10), Plaintiff has at least shown a dispute of material fact as to whether she had a protected property interest in her continued employment with WCSD sufficient to withstand summary judgment. *Compare Palm v. Los Angeles Dep't of Water & Power*, 889 F.3d 1081, 1087-88 (9th Cir. 2018) (affirming dismissal of Section 1983 procedural due process claim where the employee was demoted from a probationary managerial position to his old position because he had no property interest in the probationary position) *with McGraw v. City of Huntington Beach*, 882 F.2d 384, 385-92 (9th Cir. 1989)

(reversing the district court's grant of summary judgment to the employer on the basis that the employee did not have protected property interest in the new, probationary position she had recently been promoted into because the employer fired the employee from both her post-probationary position and the probationary position she had been promoted into); *see also Hunt v. Washoe Cty. Sch. Dist.*, Case No. 3:18-cv-00501-LRH-WGC, 2019 WL 4262510, at *4 (D. Nev. Sept. 9, 2019) ("Based on the plain language of Chapter 391, there is a protected property interest in continued employment with the District for qualified teachers and administrators.") (citation omitted).

### 2. Deprivation

On the next element, Defendants argue they did not deprive Plaintiff of anything because she was ultimately reinstated, and given back pay and benefits, following the post-termination arbitration where Plaintiff prevailed. (ECF No. 57 at 15-16.) Plaintiff counters that she suffered a deprivation in the form of emotional distress and the six-month period she went without pay between her termination and reinstatement following the arbitration. (ECF No. 60 at 15-16.) Plaintiff separately argues in her reply in support of her Motion that she was harmed because she had to incur attorneys' fees in the arbitration proceeding to vindicate her rights, which she would not have otherwise had to incur if WCSD had handled the proceedings surrounding her termination in accordance with state law. (ECF No. 50 at 8.) The Court agrees with Defendants.

"Since the property rights in demotion and salary can be and were fully restored, we conclude that on balance, the grievance procedure provided adequate due process, *see generally Mathews v. Eldridge*, 424 U.S. 319 (1976), and that [the plaintiff] received all the process he was due before any final deprivation of his interests." *Gearhart v. Thorne*, 768 F.2d 1072, 1073 (9th Cir. 1985). Here, there is no dispute that Plaintiff won reinstatement—she is now an assistant principal at a different high school within WCSD—along with back pay and back benefits after she prevailed at arbitration. (ECF No. 60 at 12.) Thus, Plaintiff did not suffer the deprivation required for her to prevail on her procedural due process claim. *See Gearhart*, 768 F.2d at 1073-74 (finding that the

plaintiff, who had won reinstatement and back pay, could not even state a claim that he had suffered the requisite deprivation); *see also Santa Ana Police Officers Ass'n v. City of Santa Ana*, 723 F. App'x 399, 402-03 (9th Cir. 2018) (finding the plaintiff's Fourteenth Amendment procedural due process claim failed because he had already won reinstatement and back pay, and thus could not show a deprivation had occurred).

### 3. Adequacy of Procedural Protections

And even if Plaintiff could show the requisite deprivation—she cannot—Defendants would still be entitled to summary judgment on Plaintiff's Fourteenth Amendment due process claim because Plaintiff received the process she was due. On this prong, the parties do not dispute that Plaintiff received an adequate post-deprivation hearing—indeed, she participated in a full arbitration proceeding through which she won reinstatement, back pay, and benefits. (ECF Nos. 57 at 21-22, 60 at 12.) Instead, the parties' arguments focus on the pre-termination process Plaintiff received. (ECF Nos. 57 at 18-25, 60 at 17-20.) As further explained below, she received the pre-termination process she was due.

A public employee receives the process she is due in the pre-termination hearing context when she is given: (1) "oral or written notice of the charges against him [or her;]" (2) an "explanation of the employer's evidence," and (3) "an opportunity to present his [or her] side of the story." *Cleveland Bd. of Educ. v. Loudermill* ("*Cleveland*"), 470 U.S. 532, 546 (1985). Requiring anything more "prior to termination would intrude to an unwarranted extent on the government's interest." *Id.* Further, "in circumstances in which a predeprivation hearing is required by due process, it 'need not be elaborate.'" *Brewster*, 149 F.3d at 985 (citation omitted).

The undisputed evidence shows Plaintiff received oral and written notice of the charges against her, an explanation of the Defendants' evidence, and an opportunity to present her side of the story before Defendants terminated her. As Defendants argue (ECF No. 57 at 20-22), and as detailed *supra* in Section II, the undisputed facts show that Plaintiff received ample pre-termination process. Indeed, before WCSD terminated

her, she received three IDP Notices listing the allegations against her, and then attended three meetings discussing each of those letters. (ECF No. 57 at 20.) She further received two LOAs that essentially substantiated many of the allegations included in two of the IDP Notices. (*Id.*) She appealed both LOAs to Deputy Superintendent McNeill, who held a hearing that Plaintiff attended with counsel, where she was able to testify and submit evidence. (*Id.* at 20-21.) McNeill later issued written decisions on both appeals, where she sustained some of the allegations against Plaintiff, but sided with Plaintiff as to other allegations. (*Id.* at 21.) Plaintiff then requested, and attended, a mediation that did not result in a settlement. (*Id.*) Accordingly, Plaintiff received sufficient pre-termination process. *See Cleveland*, 470 U.S. at 546 ("The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story."); *see also Brewster*, 149 F.3d at 985 (finding the plaintiff "received predeprivation process that was more than constitutionally adequate" where the plaintiff received two pretermination notices in writing, and was able to attend a meeting with a union representative present); *Enos v. Douglas Cty.*, Case No. 3:17-cv-00095-MMD-CBC, 2020 WL 1324995, at *8 (D. Nev. Mar. 20, 2020) (denying the plaintiff's summary judgment motion as to his procedural due process claim because he was provided with constitutionally sufficient due process).

Plaintiff also contends as part of her argument that Defendants violated her due process rights because they violated NRS § 391.824(1) in firing her after she had requested arbitration, but before Defendant Davis received the arbitrator's report. (ECF No. 37 at 20.) And Plaintiff appears correct that Defendants violated NRS § 391.824(1), "but that is not the correct standard." *Enos*, 2020 WL 1324995, at *8. Instead, as Defendants argue (ECF No. 41 at 14), "[i]t is well settled that 'the minimum procedural requirements are a matter of federal law'—and are not defined by state law." *Enos*, 2020 WL 1324995, at *8 (quoting *Cleveland*, 470 U.S. at 541-42). Thus, Plaintiff's reliance on

14

Defendants' violation of NRS § 391.824(1) does not save her Fourteenth Amendment procedural due process claim from summary judgment.

Moreover, the fact that Plaintiff already won full reinstatement with back pay and benefits further weighs in favor of finding that she received the process she was due. *See Russo v. Clark Cty. Sch. Dist.*, Case No. 2:17-cv-805-JCM-VCF, 2019 WL 1359263, at *5 (D. Nev. Mar. 26, 2019), *appeal dismissed*, Case No. 19-15744, 2019 WL 3059950 (9th Cir. July 5, 2019) ("For example, where a demoted employee ultimately prevails through internal grievance procedures and is awarded reinstatement with full back pay, the private interests at stake diminish relative to the other *Mathews* factors.") (citing *Gearhart*, 768 F.2d at 1073). In sum, the Court will grant Defendants' Motion as to Plaintiff's Fourteenth Amendment procedural due process claim because she did not suffer a deprivation, and received the process she was due in any event.

### C. *Monell* and Nevada Due Process Claims

Because Plaintiff's Fourteenth Amendment procedural due process claim fails, so do her *Monell* claim and her due process claim under the Nevada Constitution. First, Plaintiff's *Monell* claim fails because the Court found *supra* that Plaintiff cannot show she was deprived of a constitutional right. *See Anderson v. Warner*, 451 F.3d 1063, 1070 (9th Cir. 2006) ("In order to hold the County liable under § 1983, [the plaintiff] must show "(1) that [s]he possessed a constitutional right of which [s]he was deprived . . ."); *see also Capp v. Cty. of San Diego*, 940 F.3d 1046, 1061 (9th Cir. 2019) (affirming in pertinent part the district court's decision to dismiss the plaintiffs' *Monell* claim where the plaintiffs had not plead a plausible underlying constitutional violation). Second, because Nevada's due process requirements are largely coextensive with those of the Fourteenth Amendment (ECF Nos. 57 at 27, 60 at 24), and the Court found *supra* that Defendants are entitled to summary judgment on Plaintiff's Fourteenth Amendment claim, Defendants are also entitled to summary judgment on Plaintiff's due process claim under Nev. Const. Art. 1, § 8(2). *See Armstrong v. Reynolds*, Case No. 2:17-cv-02528-APG-CWH, 2019 WL 1062364, at *2 n.16 (D. Nev. Mar. 6, 2019) ("The Supreme Court of

1  Nevada has relied on federal precedent in determining the scope of Nevada's Due
2  Process clause. Therefore, the analysis for both counts is the same.") (citing *Saticoy Bay*
3  *LLC Series 350 Durango 104 v. Wells Fargo Home Mortgage*, 388 P.3d 970, 972 n.3
4  (Nev. 2017)). The Court will also grant Defendants' Motion as to these two claims.

### D. Tortious Discharge in Violation of Public Policy

Defendants finally argue they are entitled to summary judgment on Plaintiff's tortious discharge in violation of public policy claim because Plaintiff did not attempt to report Ford's allegedly unlawful conduct to an appropriate government official outside her organization. (ECF No. 57 at 27-29.) Plaintiff counters that she made her report to the appropriate official, Area Superintendent Gonzalez. (ECF No. 60 at 26-28.) Plaintiff further tries to distinguish *Colagiovanni v. CH2M Hill, Inc.*, Case No. 2:13-cv-01508-APG-GWF, 2015 WL 1334900, at *9 (D. Nev. Mar. 20, 2015) by arguing the pertinent holding from that case only applies to employees at private companies, not public employees like Plaintiff. (ECF No. 60 at 27-28.) The Court agrees with Defendants.

More specifically, and contrary to Plaintiff's argument, the distinction the Nevada Supreme Court drew in *Wiltsie v. Baby Grand Corp.*, 774 P.2d 432, 433-34 (Nev. 1989) was not between private and public employers, but whether the terminated employee was exclusively working to vindicate private interests—*i.e.* save their own job—or also vindicate public interests, meaning working towards the public good. *See id.* Thus, in *Wiltsie*, the Nevada Supreme Court affirmed the district court's grant of summary judgment to the defendant employer where the plaintiff had reported purportedly illegal conduct to his supervisor, rather than the "appropriate authorities" outside his company, such as the Gaming Control Board. *See id.* Similarly, in *Colagiovanni*, Judge Gordon granted summary judgment to the employer defendant because the plaintiff had only reported the purported illegal activity to his supervisor, and not someone outside his company. *See* 2015 WL 1334900, at *9. Judge Gordon succinctly noted, "[u]nder Nevada law, reports to a supervisor within the company are insufficient[.]" *Id.* In addition, in *Buchanan v. Watkins & Letofsky, LLP.*, Case No. 2:19-cv-00226-GMN-VCF, 2019 WL

3848785, at *8 (D. Nev. Aug. 15, 2019), Judge Navarro dismissed the plaintiff's tortious discharge in violation of public policy claim with prejudice because she found the plaintiff's "act of filing a complaint with the Labor Commissioner concerned her dispute with Defendant over wages due rather than the public interest." *Id.* Moreover, the Ninth Circuit Court of Appeals affirmed the district court's grant of summary judgment to the employer defendant on this claim in the unpublished disposition of *Bielser v. Prof'l Sys. Corp.*, 177 F. App'x 655, 656 (9th Cir. 2006), noting "Nevada precedent is clear, therefore, that unless an employee reports the employer's allegedly illegal activity to authorities outside of the company, he or she cannot claim protected whistleblower status." *Id.*; *see also Asdale v. Int'l Game Tech.*, 549 F. App'x 611, 614 (9th Cir. 2013) ("Nevada's tortious-discharge law states that an employee must expose an employer's illegal activity to the proper authorities, not merely to a supervisor, to be entitled to protection for whistleblowing.").

Thus, Plaintiff must have reported her allegation against Ford to someone outside her organization for her tortious discharge claim to proceed past summary judgment, but she did not. Instead, she complained to another supervisor within WCSD, Area Superintendent Gonzalez. There is no real dispute Area Superintendent Gonzalez worked for the same organization as Plaintiff, Defendant WCSD. And as Defendants argue (ECF No. 63 at 14), the undisputed evidence shows that Area Superintendent Gonzalez was also Plaintiff's supervisor because he issued her the first letter indicating she would be reassigned to a middle school while she was investigated. (ECF No. 48-1; *see also* ECF No. 48-5 at 3 (describing himself as Plaintiff's supervisor's supervisor).) Further, while Plaintiff proffers WCSD's Board Policy to support her argument that Area Superintendent Gonzalez was the appropriate person to report her allegations to (ECF No. 60 at 27 n.15), the policy actually provides that she should have reported her allegations against Ford "to an appropriate authority, including school police or other law enforcement agency or through established District complaint processes" (ECF No. 60-3 at 5). There is no dispute Plaintiff did not submit a report to any sort of law enforcement.

And to the extent Plaintiff argues that her complaint to Area Superintendent Gonzalez was "through an established complaint process[,]" that still does not suggest that Area Superintendent Gonzalez is an 'appropriate authority' outside Plaintiff's organization, WCSD. Thus, the undisputed evidence shows Plaintiff reported Ford's allegedly illegal behavior to one of her supervisors, and not the "appropriate authorities" outside WCSD.[7] Moreover, Plaintiff does not even argue that she was attempting to vindicate public interests implicating something beyond her own job in attempting to report Ford to Area Superintendent Gonzalez.[8] (ECF No. 60 at 26-29.) Defendants are therefore entitled to summary judgment on Plaintiff's tortious discharge in violation of public policy claim. *See Wiltsie*, 774 P.2d at 433-34; *Colagiovanni*, 2015 WL 1334900, at *9.

In sum, the Court will grant Defendants' Motion in full, and deny Plaintiff's Motion in its entirety.

**V.    CONCLUSION**

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motions before the Court.

It is therefore ordered that Plaintiff's motion for partial summary judgment (ECF No. 37) is denied.

It is further ordered that Plaintiff's motion to seal (ECF No. 38) is granted.

It is further ordered that Defendants' motion for summary judgment (ECF No. 57) is granted.

---

[7]While the parties do not offer much argument on who the "appropriate authorities" are beyond Area Superintendent Gonzalez, presumably they would include law enforcement, and the school board. (ECF No. 60-3 at 2 (indicating that all WCSD employees ultimately report to the school board).)

[8]Indeed, the evidence suggests the opposite. (ECF No. 48-4 at 2 (stating in an email to Area Superintended Gonzalez that "I believe the findings from this investigation will have an impact on my own pending allegations from my principal that resulted in my temporary placement to another school site.").)

The Clerk of Court is directed to enter judgment accordingly and close this case.

DATED THIS 17th Day of February 2021.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE