ROBERT A. DOTSON
Nevada State Bar No. 5285
JUSTIN C. VANCE
Nevada State Bar No. 11306
DOTSON LAW
5355 Reno Corporate Dr., Ste 100
Reno, Nevada 89511
Tel:  (775) 501-9400
Email:  rdotson@dotsonlaw.legal
          jvance@dotsonlaw.legal
Attorneys for Defendant,
Washoe County School District

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| TRINA OLSEN,<br><br>Plaintiff,<br>vs.<br><br>WASHOE COUNTY SCHOOL DISTRICT, a political subdivision of the State of Nevada; Washoe County School District Superintendent TRACI DAVIS; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.:  3:19-cv-00665-MMD-WGC<br><br>**DEFENDANT WASHOE COUNTY SCHOOL DISTRICT'S REPLY IN SUPPORT OF MOTION FOR ATTORNEYS' FEES** |

Defendant WASHOE COUNTY SCHOOL DISTRICT ("Defendant" and/or "WCSD"), by and through its counsel of record, DOTSON LAW, hereby files this Reply in Support of Motion for Attorney's Fees and Costs.

## MEMORANDUM OF POINTS AND AUTHORITIES

In Plaintiffs Opposition to WCSD's Motion for Attorney's Fees [ECF No. 74], she essentially argues that her claim does not meet the standard of being "frivolous, unreasonable, or without foundation," and that WCSD's motion does not meet the standards of LR 54-14 or the *Brunzell* factors.  For the reasons set forth herein, Plaintiff's arguments lack merit and WCSD's motion should be granted.

///

///

///

DOTSON LAW
5355 RENO CORPORATE DR.
SUITE #100
RENO, NEVADA 89511

1

**A.** **The Ninth Circuit does not employ a different, more stringent standard that the United States Supreme Court as stated in *Christiansburg* and its progeny; rather, the standard is the same and the *Christiansburg* line of cases apply here.**

In opposition to WCSD's motion, Plaintiff tries to argue that the standard followed by the Ninth Circuit is somehow a more strenuous standard than that set forth by the United States Supreme Court in *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 98 S.Ct. 694 (1978), which is that the plaintiff's action must be "frivolous, unreasonable, or without foundation." *Christiansburg,* 434 U.S. at 421, 98 S.Ct. at 700. Plaintiff cites to case law suggesting that fees should be awarded to a prevailing defendant in "exceptional circumstances." (Opp. [ECF No. 74] at 2:11-15.) Yet the three cases she cites also explicitly reference a standard identical or similar to that enunciated in *Christiansburg*.

The first case Plaintiff cites in support of her assertion that only "exceptional circumstances" warrant an award of attorneys' fees is *Barry v. Fowler,* 902 F.2d 770 (9th Cir. 1990). However, *Barry* also references the "frivolous, unreasonable or without foundation" standard, citing *Hughes,* which in turn cites back to *Christiansburg*. *See Barry,* 902 F.2d at 773, citing *Hughes v. Rowe,* 449 U.S. 5, 14, 101 S.Ct. 173, 178 (1980).[1] The *Manufactured Homes* case cited by Plaintiff also references the heightened standard asbeing the "frivolous, unreasonable, or without foundation" standard as discussed in *Hughes*. *See Manufactured Home Communities Inc v. City of San Jose,* 420 F.3d 1022, 1036 (9th Cir. 2005), citing *Hughes,* 449 U.S. at 5. This is also true of the *Mitchell* case Plaintiff cites, as it too identifies the *Hughes* (and by extension *Christiansburg)* standard in the same breath as its statement that attorney's fees should only be awarded to prevailing defendants in "exceptional" cases. *See Mitchell Los Angeles Community College Dist.,* 861 F.2d 198, 202 (9th Cir. 1988), citing *Hughes,* 449 U.S. at 5.

Plaintiff appears critical of WCSD's citation to *Christiansburg*, scoffing at its use of the "forty-three-year-old Supreme Court case." (Opp. [ECF No. 74] at 3:12-14.)

---

[1] *Hughes* cites back to *Christiansburg. See Hughes,* 449 U.S. at 14, 101 S.Ct. at 178.

This is ironic, considering that the *Barry, Manufactured Home,* and *Mitchell* cases cited by Plaintiff all lead back to *Christiansburg* as stated above.  This is also true of a large number of other cases cited by Plaintiff (without any analysis) at the bottom of page 2 of her opposition, which specifically cite to *Christiansburg*.[2]

Plaintiff also claims that WCSD's citation to cases from other circuits "conflict[s] with the high standard established by the 9th Circuit..."  (Opp. [ECF No. 74] at 3:4-7.)  Perhaps the greatest indictment on Plaintiff's claim that WCSD's cited cases conflict with the supposedly higher Ninth Circuit standard is her reference to WCSD's citation to *Head v. Medford,* 62 F.3d 351,356 (11th Cir. 1995) as her example.[3]  But *Head* does not conflict with this supposedly higher Ninth Circuit standard.  In fact, in *Tutor-Saliba Corp.,* the Ninth Circuit cited the *Head* decision *(see Tutor-Saliba Corp. v. City of Hailey,* 452 F.3d 1055, 1060 (9th Cir. 2006))* in support of its eventual affirmation of an award of attorney's fees to a prevailing defendant whose claims were determined to be frivolous "because Tutor knew or should have known that he had no factual basis for his constitutional claims at the outset of the litigation." *Id.* at 1066.  In further contradiction of Plaintiff's claim that the Ninth Circuit employs a more stringent standard than that set forth in *Christiansburg,* the Ninth Circuit specifically discussed what the correct legal standard was in awarding a defendant attorney's fees under 42 USC§ 1988 and expressly found that, since the district court cited to *Christiansburg,* it was "aware of the proper legal standard." *Tutor-Saliba Corp.,* 452 F.3d at 1060.

Simply put, the *Christiansburg* standard is the applicable standard in the Ninth Circuit.  The "exceptional circumstances" referred to by Plaintiff in her citations to the Ninth Circuit opinions discussed above is not a different, or even more

---

[2] *See, e.g.*, *Hensley v. Eckerhart*, 461 U.S. 424, 429 n.2, 103 S. Ct. 1933, 1937 n.2 (1983); *Fabbrini v. City of Dunsmuir*, 631 F.3d 1299, 1302 (9th Cir. 2011); *Harris v. Maricopa Cty. Superior Court*, 631 F.3d 963, 968 (9th Cir. 2011); *Edgerly v. City & Cty. of San Francisco*, 599 F.3d 946, 962 (9th Cir. 2010); *Gibson v. Office of Atty. Gen., State of California*, 561 F.3d 920, 929 (9th Cir. 2009); *Galen v. Cty. of Los Angeles*, 477 F.3d 652, 666 (9th Cir. 2007); *Tutor-Saliba Corp. v. City of Hailey*, 452 F.3d 1055, 1060 (9th Cir. 2006); *Thomas v. City of Tacoma*, 410 F.3d 644, 647 (9th Cir. 2005).

[3] Plaintiff correctly points out a typo in WCSD's brief, as *Head* is an Eleventh Circuit case as opposed to a Ninth Circuit case.

stringent, standard than that enunciated in *Christiansburg* and its progeny.  On the contrary, a frivolous, unreasonable, or meritless case is the embodiment of the "exceptional circumstances" these cases refer to.  WCSD's contention is that Plaintiff's case is one of those "exceptional circumstances" where there was simply no grounds for filing it.

      **B.**      **<u>Plaintiff's lawsuit against WCSD is one of those "exceptional circumstances" where the case is "frivolous, unreasonable, or without foundation."</u>**

Plaintiff argues that her case does not meet the applicable standard to support an award of attorney's fees against her.  In doing so, she largely rehashes the arguments set forth in her briefing on the parties' respective motions for summary judgment.  She argues again as to the merits of her termination in light of the alleged contradiction with a state statute and the adequacy of her pretermination procedures. (Opp. [ECF No. 74] at 3:21-4:11.)  She cites the same case, *Eldridge-Murphy*, which she cited in her Opposition to WCSD's Motion for Summary Judgment [ECF No. 60] suggesting that a 16-day suspension is a deprivation of a property interest.  However, *Eldridge-Murphy* did not deal with a situation like the instant matter where back pay was provided thus making the plaintiff whole.  *See Eldridge-Murphy v. Clark County School Dist.*, 2015 WL 224416 (D. Nev. Jan. 15, 2015).  Unlike the instant matter, *Eldridge-Murphy* also involved a question as to whether the plaintiff received a post-suspension hearing.  *Id*. at *5.  The fact of the matter is, it has been undisputed from the inception of this lawsuit that Plaintiff received a post-termination hearing (the arbitration) which resulted in her reinstatement.

Plaintiff's repeated arguments as to the merits of her termination or the adequacy of the pre-termination procedures continue to be red herrings, as the critical point upon which the merits of her entire case turns is the *post*-termination process which it is undisputed she received and which led to her reinstatement.  Even if Olsen's pre-termination process were insufficient (a point WCSD denies), and even if her termination itself was meritless (another point which WCSD denies), the fact

remains that she received and took advantage of a post-termination process which resulted in her reinstatement and back pay.  A public employee is only entitled to a "very limited hearing prior to his termination" and it is the post-termination hearing which is to be more comprehensive. *Gilbert v. Homar*, 520 U.S. 924, 929, 117 S. Ct. 1807, 1811 (1997), citing *Cleveland Bd. of Ed. v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487 (1985).  In *Zinermon*, the United States Supreme Court stated with respect to procedural due process claims that "[t]he constitutional violation... <u>is not complete unless and until the State fails to provide due process</u>. *Zinermon v. Burch*, 494 U.S. 113, 125-26, 110 S. Ct. 975, 983 (1990) (emphasis added).  Here, as Olsen received the post-termination hearing which led to her reinstatement and back pay, the deprivation was never complete.

In *Tutor-Saliba*, the plaintiff had been denied access to land his personal jet at a local airport which would allow access to his vacation home due to weight restrictions for that particular runway.  However, he was still able to access his vacation home by using an alternative jet that met the weight requirements.  Because Tutor was not actually deprived of a property interest, since he was not deprived of access to the airport, the Ninth Circuit found the district court did not abuse its discretion in finding the claim was frivolous and that Tutor knew it was frivolous from the outset of the litigation and it thus upheld an award of attorney's fees in favor of the defendant on that basis. *Tutor-Saliba Corp.*, 452 F.3d at 1061.  In *Patton*, a case cited by Plaintiff, the Ninth Circuit upheld the award of attorney's fees on the basis that Patton's lawsuit was groundless where he "successfully availed himself of the state's procedural safeguards ... [and] was not denied due process." *Patton*, 857 F.2d at 1382.  Critically, that is the position that Plaintiff finds herself in.

Here, Plaintiff was not ultimately deprived of a property interest and in fact successfully availed herself of the process provided to obtain reinstatement and back pay.  As stated in *Workman*, "[w]hen a procedure produces full protection, we need not examine the procedure for error." *Workman v. Jordan*, 32 F.3d 475, 480.  Though

Plaintiff, as did Workman, alleges a list of procedural errors with respect to the pre-termination procedure, "the fact of [her] reinstatement remains" (*id*. at 480) and there is simply no lawful basis for her to claim a deprivation exists.  It was facts like this that led the *Thacker* court to exclaim: "Under these circumstances, we cannot understand how plaintiff can seriously allege that he was deprived of due process of law." *Thacker v. Whitehead*, 407 F. Supp. 1111, 1114 (E.D. Tenn. 1976), *aff'd*, 548 F.2d 634 (6th Cir. 1977).  Similarly, here, it boggles the mind how Plaintiff, a current assistant principal who was fully reinstated with back pay, can file a lawsuit against her current employer alleging due process violations when she fully took advantage of the procedure provided so that a deprivation did not ultimately occur.  If ever a case was groundless from the outset, it is this one, as the fact of Plaintiff's reinstatement has been known to her since before the inception of this case.[4]

Plaintiff suggests that the fact that the Court sided with her on two "hotly contested" points – that she in fact had a property interest and that she had persuasively responded to an evidentiary objection – favors a finding that her case was not groundless.  (Opp. [ECF No. 74] at 5:22-26.)  But these facts were not the critical point upon which her case turned; that is, whether she suffered a deprivation of a property interest.  The Court's findings on either of those points referenced by Plaintiff had absolutely no bearing whatsoever on whether Plaintiff was reinstated with back pay and therefore whether she suffered an actionable deprivation of a property interest, much less actually allow her to prevail on the summary judgment motions.  Plaintiff also argues that the fact that the Court "was required to weigh whether Olsen's claim should be permitted to proceed" means the claim was not groundless.  (Opp. [ECF No. 74] at 5:2-6.)  By this logic, any time a court is tasked with deciding a motion for summary judgment, the claims at issue cannot be groundless.  This argument lacks merit, as a number of the cases cited herein where

---

[4] Plaintiff's claims of emotional trauma, the depletion of savings, and incurrence of attorney's fees are incidental losses which "do not give rise to an independent protected property interest." *Workman v. Jordan*, 32 F.3d 475, 480 n.4 (10th Cir. 1994).

attorney's fees were granted to a prevailing defendant arose in the context of a court weighing whether that matter should proceed or whether summary judgment was appropriate. Summary judgment is simply one way in which a court can dispose of groundless cases and it did so here.

Despite Plaintiff's arguments to the contrary, the ancillary tortious discharge claim was equally groundless as there is no question the applicable law requires reporting outside of the organization. There is nothing about *Wiltsie*, the controlling law on the issue, nor any other case that Plaintiff can cite, that would suggest that a public employer as opposed to a private employer would have different reporting requirements to support such a claim. *Wiltsie* makes it clear that a supervisor is not an "appropriate authority." *See Wiltsie v. Baby Grand Corp.*, l05 Nev. 291, 292-293, 774 P.2d 432, 433 (1989). Other cases confirm that reporting to a supervisor is insufficient to support such a claim. *See, e.g., Asdale v. Int'l Game Tech.*, 549 F. App'x 611, 614 (Unpublished, 9th Cir. 2013) (report cannot be made "merely to a supervisor"); *Colagiovanni v. CH2M Hill, Inc.*, 2015 6 WL 1334900, at *9 (D. Nev. Mar. 20, 2015), *aff'd*, 692 F. App'x 860 (9th Cir. 2017) ("Under Nevada law, reports to a supervisor within the company are insufficient."); *Bielser v. Prof'l Sys. Corp.*, 321 F. Supp. 2d 1165, 1169 (D. Nev. 2004), *aff'd*, 177 F. App'x 655 (9th Cir. 2006) (internal reporting is not sufficient to maintain a tortious discharge claim). The distinction between a public company and a school district is not one which changes this analysis. Area Superintendent Roger Gonzalez was clearly not an outside authority, as both Plaintiff and Gonzalez were employees of the Washoe County School District. This is information Plaintiff knew from the outset of her case, thus she knew or should have known that she could not prevail as a matter of law and the claim was groundless.

### C.   WCSD complied with LR 54-14 and sufficiently addressed the *Brunzell* factors.

Plaintiff argues that WCSD does not meet the requirements of LR 54-14 or *Brunzell* by identifying the factors to be addressed and suggesting that WCSD did not

adequately address those factors.  It should be noted that LR 54-14 only requires "[a] brief summary" of the factors identified.  WCSD either did in fact address each of these factors or, in some instances, did not address factors that were simply not relevant in this particular case.  Plaintiff contends that the following elements of LR 54-14(a)(3) were not addressed, and WCSD will respond as to each category below:

### (C) - The novelty and difficulty of the questions involved

WCSD did address this element, noting that the "case involved complex constitutional issues and required the devotion of a significant amount of time to review documents and conduct legal research... " (Affidavit of Justin Vance ("Vance Aff.") ([ECF No. 71] at ¶ 6.)

### (E) - The preclusion of other employment by the attorney due to acceptance of the case

This factor simply is not applicable here, as WCSD counsel is not arguing that it was precluded from accepting any other matters.  In *Cutts*, the Nevada District Court awarded attorney's fees to a prevailing defendant despite the fact that some of the LR 54-14 factors were not discussed and the court found those factors not relevant.  *Cutts v. Richland Holdings, Inc.*, No. 217CV1525JCMPAL, 2019 WL 591442, at *4 (D. Nev. Feb. 13, 2019) (stating, with respect to various factors, "Defendants do not provide information on this factor, and the court finds that it is not relevant.")  That analysis should apply as to this factor here.

### (F) - The customary fee

WCSD did address this element, specifically noting that Mr. Dotson's standard hourly rate is $400/hour and that Mr. Vance's standard hourly rate is $300/hour, though they performed the work at discounted rates of $375/hour and $275/hour, respectively.  (*See* Vance Aff. [ECF No. 71] at ¶ 5; Affidavit of Rob Dotson ("Dotson Aff.") [ECF No. 72] at ¶ 8.)

### (H) - The time limitations imposed by the client and the circumstances

This factor was not relevant here and was therefore not discussed as there were no time limitations imposed beyond the standard time limitations imposed by

DOTSON LAW
5355 RENO CORPORATE DR.
SUITE #100
RENO, NEVADA 89511

scheduling orders and the Federal Rules of Civil Procedure. This is one of the factors that the court found was not relevant to the analysis in *Cutts*. *See Cutts*, 2019 WL 591442, at *4.) It similarly should bear no weight here.

### (J) - The undesirability of the case

This factor was not relevant here and was therefore not discussed, as there was nothing undesirable about this case. This is one of the factors that the court found was not relevant to the analysis in *Cutts*. *See Cutts*, 2019 WL 591442, at *4.) It also should not carry any weight in this analysis.

### (L) - Awards in similar cases

This is a unique case in that Plaintiff is a current employee of WCSD after having been fully reinstated. This unique fact, couple with the generally large array of potential fact patterns found in § 1983 cases, makes it difficult to pinpoint a similar case. However, awards in § 1983 cases can clearly be significant. In *Crane v. McNab. v. County of Merced*, the Eastern District of California found that the plaintiff's § 1983 claims and state law claims lacked merit from the outset of the litigation and awarded fees in the amount of $386,131.25 in favor of the County. *Crane*, 773 F.Supp.2d 861 (2011). In *Head*, where a plaintiff had similarly brought § 1983 claims that were groundless because they were based on an alleged interest she did not have (here, Olsen had an interest, she just had not been deprived of it), the court reversed a denial of attorney's fees; however, there is no discussion regarding the amount of fees ultimately awarded. *Head v. Medford*, 62 F.3d 351, 356 (11th Cir. 1995). In *Tutor-Saliba Corp.*, the district court originally granted $88,094.05 in attorney's fees in a case also involving frivolous due process claims. *See Tutor-Saliba Corp.*, 452 F.3d at 1060. After the case was remanded so the district court could further elucidate its reasoning as to the fee award (*id.* at 1066), it is unclear whether that amount ultimately stood or not. *Friedman* was a District of Nevada case decided in July 2020 involving Section 1983 claims and an award of attorney's fees under Section 1988. *See Friedman v. United States*, 2020 WL 5229032 (D. Nev. July 31,

2020).  Defendant prevailed on summary judgment and the Court awarded fees under the *Christiansburg* standard discussed above in the amount of $115,632.16.  *Id*. at \*2-3.

In sum, due to the unique nature of this case, it is difficult to find factual comparisons.  The lack of similarly situated cases should not be an indictment on the appropriateness of the fees claimed here.  However, based upon the awards in other constitutional law cases, as described above, Defendant's request for $116,974.75 should not be considered unreasonable.  Certainly, Plaintiff has not pointed to anything that would suggest this factor should reduce the "lodestar" amount set forth herein.

### (1)  The rate charged by WCSD counsel was reasonable and customary.

Reasonable attorney's fees are based on the "lodestar" calculation set forth in *Hensley v. Eckerhart* wherein the Court must first determine a reasonable fee by multiplying "the number of hours reasonably expended on the litigation" by "a reasonable hourly rate."  *Knickmeyer v. Nevada ex rel. Eighth Jud. Dist. Ct.*, 2017 WL 936624, at \*2 (D. Nev. Mar. 9, 2017), citing *Hensley v. Eckerhart*, 461 U.S. 424, 433-434, 103 S. Ct. 1933, 1939-1940 (1983).  Once that "lodestar" number is determined, the Court can make further adjustments based on the additional LR 54-14 factors described above.  *See id*.

Importantly, Plaintiff does not dispute the reasonableness of the time expended or the total "lodestar" amount.  She does suggest that Defendants did not sufficiently establish that the fees charged are reasonable or customary for attorneys in the area and that they did not sufficiently set forth Mr. Vance's qualities as an attorney; however, Plaintiff does not describe how that should affect the lodestar amount, if at all.  (Opp. [ECF No. 74] at 715-23.)

A reasonable hourly rate is based on the local market rate and "[t]he best evidence of the market rate is the amount the attorney actually bills for similar work..."  *Montanez v. Simon*, 755 F.3d 547, 553 (7th Cir. 2014); *see also Johnson v.*

*GDF, Inc.*, 668 F.3d 927, 933 (7th Cir. 2012).  It is only when evidence of the amount the attorney usually bills for similar work that that the Court need rely on additional evidence of rates charged by similarly experienced attorneys.  *Montanez*, 755 F.3d at 553.  If a party fails to carry its burden, "the district court can independently determine the appropriate rate." *Id.*

Here, WCSD meets this burden by stating what Dotson Law's standard rates were as well as compared with the discounted rate that was charged WCSD and Mr. Dotson and Mr. Vance both attest that these fees were reasonable.  (Dotson Aff. [ECF No. 72] at ¶¶ 7- 8; Vance Aff. [ECF No. 71] at ¶¶ 4-5.)  Plaintiff acknowledges that Mr. Dotson is qualified for the rate claimed.  (Opp. [ECF No. 74] at 7:23-24.)  To the extent the Court believes additional attestation is required as to the reasonableness of the $275/hour rate charged by Mr. Vance, WCSD is filing contemporaneously herewith an Affidavit of Justin Vance which includes his Resume and further attestation that he is familiar with the rates typically charged for similar work in Reno, Nevada and that these rates fall within those ranges.  (*See* Affidavit of Justin Vance filed March 10, 2021 at ¶¶ 4-7; **Exhibit 1** to Vance Aff., Justin Vance Resume.)  Additionally, this Court has previously found that fees for partner time in the amounts of $425-$475/hour for partner time and $250-$325/hour for associate time are reasonable based upon the prevailing rates in this forum.  *See Plaza Bank v. Alan Green Family Trust*, 2013 WL 1759580, *2 (D. Nev. April 24, 2013) (discussing rates seven years ago).  Both Mr. Dotson's and Mr. Vance's rates are within these ranges.[5]

Finally, cases addressing the reasonableness of fee awards uniformly hold that when a Plaintiff has achieved an excellent result, such as here, the plaintiff's attorney should recover the <u>full</u> amount of their lodestar.  In *Hensley*, the United States Supreme Court held as follows:

> <u>Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee</u>.

---

[5] It should be noted that although Mr. Vance is currently an associate at Dotson Law, his experience is such that he was previously a junior partner at Laxalt & Nomura from March 2016 through August 2018. (*See* **Exhibit 1** to Vance Aff. (March 10, 2021), Justin Vance Resume.)

> Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified ... <u>The result is what matters</u>.

*Hensley v. Eckerhart*, 461 U.S. 424, 435, 103 S. Ct. 1933, 1940 (1983) (emphasis added).  Other cases are in accord.  *See, e.g., Montanez*, 755 F.3d at 553 (stating that a plaintiff who achieves "excellent results" should receive the entire lodestar); *Lane v. Capital Acquisitions & Mgmt. Co.*, 554 F. Supp. 2d 1345, 1348-49 (S.D. Fla. 2008) ("The most important consideration in adjusting a resulting lodestar is the degree of a plaintiff's success in litigation"); *Dang v. Cross*, 422 F.3d 800, 813 (9th Cir. 2005) (The extent of plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees under [Section 1988].")  Here, there is no question that WCSD was successful in obtaining summary judgment on each of Plaintiff's claims, thus attaining excellent results.  This should weigh heavily in WCSD's recovery of its entire lodestar.

In sum, WCSD has sufficiently addressed the LR 54-14 factors, has shown the fee charged was reasonable and customary, and has identified a lodestar of $116,974.75 by appropriately multiplying the hourly rates by the hours worked.  Despite her general opposition and trying to argue that WCSD did not adequately address the LR 54-14 factors, Plaintiff does not provide any suggestions as to how or why the lodestar should be adjusted.

**(2)    Should the Court require further discussion on the LR 54-14 elements, WCSD requests leave to supplement its motion with whatever information the Court requires.**

WCSD contends that it has sufficiently addressed the factors this Court must review in determining whether the fees claimed are reasonable.  However, if the Court believes that one or more of these factors was not sufficiently addressed, WCSD seeks leave to file supplemental briefing addressing those particular elements.  This Court has previously denied attorney's fees requests without prejudice and allowed additional filings to comply with LR 54-14.  *See, e.g., Healthcare Servs. Grp., Inc. v. MMMT Corp.*, No. 2:20-CV-50 JCM (VCF), 2020 WL 8674200, at *2 (D. Nev. July

6, 2020); *see also U.S.A. Dawgs, Inc. v. Crocs, Inc.*, 2019 WL 2291457 (D. Nev. May 29, 2019) (Court ordered supplemental briefing).  While WCSD does not believe additional discussion is necessary, it would welcome the opportunity to provide supplemental briefing on any issues the Court believes requires further discussion.

### **<u>CONCLUSION</u>**

WCSD has established a basis for an attorney's fees award under the *Christiansburg* standard, and has demonstrated the reasonableness of the fees claimed.  Further, Plaintiff has not substantively addressed any basis for a reduction in the lodestar amount claimed.  For the reasons set forth herein, WCSD respectfully requests that the Court award it attorneys' fees in the amount of $116,974.75.

DATED this 10th day of March, 2021.

DOTSON LAW


 /s/ JUSTIN C. VANCE
ROBERT A. DOTSON
Nevada State Bar No. 5285
JUSTIN C. VANCE
Nevada State Bar No. 11306
5355 Reno Corporate Dr., Ste 100
Reno, Nevada 89511
(775) 501-9400
Attorneys for Defendant,
Washoe County School District

### CERTIFICATE OF SERVICE

Pursuant to FRCP 5(b), I hereby certify that I am an employee of DOTSON LAW and that on this date I caused to be served a true and correct copy of the foregoing by:

☐ (BY MAIL) on all parties in said action, by placing a true copy thereof enclosed in a sealed envelope in a designated area for outgoing mail, addressed as set forth below.  At Dotson Law, mail placed in that designated area is given the correct amount of postage and is deposited that same date in the ordinary course of business, in a United States mailbox in the City of Reno, County of Washoe, Nevada.

☒ By electronic service by filing the foregoing with the Clerk of Court using the CM/ECF system, which will electronically mail the filing to the following individuals.

☐ (BY PERSONAL DELIVERY) by causing a true copy thereof to be hand delivered this date to the address(es) at the address(es) set forth below.

☐ (BY FACSIMILE) on the parties in said action by causing a true copy thereof to be telecopied to the number indicated after the address(es) noted below.

☒ Email.

addressed as follows:

Luke A. Busby                           Katherine F. Parks
Luke Andrew Busby, Ltd.                 Thorndal, Armstrong, Delk,
316 California Ave., # 82               Balkenbush & Eisinger
Reno, NV  89509                         6590 S. McCarran Blvd. Ste B
luke@lukeandrewbusbyltd.com             Reno, NV  89509
                                        kfp@thorndal.com

DATED this 10th day of March, 2021.


/s/ L. MORGAN BOGUMIL
L. MORGAN BOGUMIL